THE PEOPLE OF THE TERRITORY OF UTAH, Respondent, *v.* GEORGE HUGHES, Appellant.

1. Robbery.—Evidence.—Animas Furandi.—Question for Jury.—Defendant, while in an intoxicated condition, lost a large sum of money at a gambling game. After losing his money, at the point of a revolver, he took a certain sum of money from the card-table and also a certain sum from the person of the one who had charge of the game. While on trial for robbery, the defendant was asked the following question: "Did you, at that time, honestly believe that the money was yours and that you had a right to take it?" To which the court sustained an objection that it was incompetent. *Held, error,* inasmuch as the intent, belief and motive of the defendant at the time of the alleged robbery was competent as bearing upon the *animas furandi,* without which no robbery could be committed, and the existence of which was a fact to be determined by the jury under proper instructions.

2. Id.—Charge to Jury.—Criminal Intent.—Burden of Proof.—The defendant, on trial for robbery, requested the court to instruct the jury "that if they should find that the defendant acted under a *bona fide* impression and honest belief that the money taken was his own—that he had a right to it, they render a verdict of not guilty." Which request the court refused to give, but instructed the jury, "I also charge you that it is not material for the prosecution to prove who owned the money; who had the best right to it.   *   *   *   The

statute * * * forbids the taking of personal property from the possession of another by means of force or fear. * * * In this case, I charge you that if Nichols had this money in his possession, and the defendant by putting him in fear compelled him either to surrender it up, or compelled him to permit the defendant to take it out of his pocket or off his person, it is an offense under the statute. * * *" *Held*, that the request asked by the defendant was proper and that the charge given by the court was incorrect, inasmuch as the taking must be with felonious intent to constitute the crime of robbery, and that if defendant acting under a *bona fide* belief that the money belonged to him, obtained the money by menaces or threats, there was a trespass but no robbery, and that the burden was on the prosecution to prove the money was owned by some other person than the defendant.

(No. 561. Decided Feb. 23, 1895. 39 P. R. 492.)

APPEAL from the District Court of the First Judicial District. Hon. H. W. Smith, *Judge.*

George Hughes, convicted of robbery, appeals from the judgment rendered, and from an order denying a new trial. *Reversed.*

*Mr. Samuel A. King,* for appellant.

*Mr. J. W. Judd,* U. S. Attorney, for the people.

MERRITT, C. J.:

This is an appeal from a judgment of the First District Court against the appellant, and from an order denying his motion for a new trial. Appellant was convicted of the crime of robbery, and sentenced to imprisonment in the penitentiary for a period of two years. The record in the case discloses that the trouble occurred in Uintah county near Ft. Duchesne, at the saloon of one William M. Nichols, who, it appears, was conducting a gambling

game called "Mexican Monte." The appellant, while in
an intoxicated condition, went to the saloon, and lost a
large sum of money at this game. After losing his money,
it is claimed that at the point of a revolver he robbed the
game of $53 by taking this sum from the card table and
from the immediate presence of Nichols, and that he also
immediately thereafter robbed Nichols of $105, taking this
amount from his person. The theory of the defense was
that, if the appellant took any money from the person or
presence of Nichols, it was under the claim of ownership,
and an honest belief that appellant had a right to the
money which had been won from him at an unlawful card
game.

Counsel for appellant has presented to this court several
assignments in his specification of errors, the major portion
of them being exceptions to the rulings of the court upon
the questions asked the various witnesses. Most of these
questions, however, are directed to the question of felonious
intent of the defendant at the time of the robbery, and for
that reason we do not deem it necessary to consider them
at all, but will content ourselves with the consideration of
the principal ones. Appellant assigns as error the action
of the court in refusing to allow him, when testifying as a
witness in his own behalf, to answer the following ques-
tion: "Did you at that time honestly believe that the
money was yours, and that you had a right to take it?"
to which question the prosecuting attorney objected, for
the reason that it was incompetent, and the court sus-
tained the objection. We think it was competent for
the defendant to testify what his intent, belief, and motive
were at the time of the alleged robbery; and the court, in
excluding this testimony, seems to have proceeded upon
the theory in part (and the charge indicates it) "that the
intention of the parties is to be derived alone from the
act done; from that and the surrounding circumstances

determine what he intended to do;" and that in arriving at the intention the defendant's own statement and testimony was not to be considered. This undoubtedly was the common-law rule, which had its origin when the defendant was not allowed to be heard in his own behalf.

The point is discussed in the case of *People* v. *Farrell*, 31 Cal. 576. The court there says: "The rule that the intent must be inferred from the acts and words of the party had its foundation in necessity, created by the rule which excluded parties in interest from the witness stand. That necessity is now removed by the abrogation of the rule which created it; and the legal tenet that actions must speak for themselves, and words furnish their own interpretation, is much modified, if not wholly abrogated, by the recent innovations upon the common law by which parties are allowed to testify in their own behalf. Before that time there was no way of ascertaining the motives and intentions of parties except by inference from their acts and sayings, and all experience shows that they may frequently, if not at all times, prove very imperfect guides. It is no answer to say that this enables a party to substitute a false motive for the true one, or to convert words spoken in one sense into another. If the argument proves anything, it proves too much, and shows that the radical change which has been made is in all respects founded in folly, rather than wisdom. For the truthfulness of parties when upon the witness stand we must depend, as in the case of other witnesses, upon the obligations of their oath, and their reputation for truth and veracity. If these can be relied upon for the truth of statements made in reference to acts and words of which the eye and ear may take notice, they may, for the same reason, be accepted as guaranties for the truth of statements made in respect to motives and intents of which the mind or inner man alone can take cognizance. Nor is there, in our judgment, any

well-grounded reason for apprehending that this rule will obstruct, rather than advance, the ends of justice. There is no more danger of imposing upon the jury falsehood or pretense in respect to motives and intents than there is of doing the like in respect to visible or external circumstances. The jury can as readily distinguish between the false. and true in respect to the former as to the latter. If the motive or intent assigned is inconsistent with the external circumstances, it must be discarded as false; if, on the contrary, they are consistent, there is no reason why they may not be true."

This doctrine was recognized in *State* v. *Harrington*, 12 Nev. 135, and followed. In that case the following question was asked the defendant by his counsel: "At the moment of the discharge of the pistol at the deceased, did you or did you not really believe that you were in danger of losing your life or receiving great bodily harm?" and Mr. Justice Leonard, in concluding his discussion on this question says: "We are entirely satisfied that, for the purpose of showing the condition of his mind at the time, and to establish the necessary conditions of justification, the defendant had the right to answer the question objected to, and that it was for the jury to consider it, like all other testimony proper to be given in the case." In *White* v. *State*, 53 Ind. 595, on the trial of an indictment for larceny, it was held competent for the defendant to testify as to what his intentions were at the time the goods came into his possession; and this doctrine is cited approvingly by Thompson in his works on Trials. In modern times the rule has been extended not only to criminal cases, but to civil cases as well, whenever the question of motive or intention is involved. This court passed on this question in the case of *Conway* v. *Clinton*, 1 Utah, 215. In that case "the defendant was charged with maliciously and wantonly destroying the goods of the plaintiff," and it was held that

the defendant could "state what motive he had, if any other than to obey the writ, in doing the act complained of;" and also whether at that time he had ill will against the plaintiff. We think the principle involved in the case at bar is the same, and that it was error to refuse the appellant the right to testify as to his belief at the time of the alleged robbery.

The defendant requested the following instructions to be given to the jury: "That if they should find that the defendant acted under a *bona fide* impression and honest belief that the money taken was his own, and that he had a right to it, they render a verdict of not guilty." The defendant could not have been guilty of robbery in taking his own property, whatever other offense he may have committed in the taking. In all criminal cases the question of intent is an important one. If this element is lacking, the general rule is that no offense has been committed. This rule is not only humane, but a contrary one would be opposed to all the principles which underlie human conduct as respects the bearing of individuals towards each other, and also as regards their position towards the state. And so the law is that, when evil intent is lacking, the act or omission, which otherwise would constitute an offense, is robbed of its criminality. The rule governing this class of cases seems to be well settled and thoroughly defined. In a note in 70 Am. Dec. 188 (*State* v. *McCune*), where a number of authorities are collected, this proposition is laid down: "When the prisoner takes the property under a *bona fide* impression that the property belongs to him, he commits no robbery, for there is no *animus furandi*." *Long* v. *State*, 12 Ga. 293; *Brown* v. *State*, 28 Ark. 126,—where the taking was in the presence of others, as was the case at bar. Again, it is held that when a creditor compels the payment of his debt by the use of violence, he is not guilty of robbery,

for there is no *animas furandi. State* v. *Holloway,* 41 Iowa, 200.    In the Iowa case, Miller, C. J., says:  " In robbery as in larceny, it is essential that the taking of the goods be *animo furandi.*   Unless the taking be with a felonious intent, it is not robbery.    If a man under a *bona fide* belief that the property is his own, obtain it by menaces, there is a trespass, but no robbery.     Though the defendant take the goods with violence, or by putting in fear, yet, if he do so under a *bona fide* claim it is no robbery, for the reason that the felonious intent is want-ing."  " In all cases of this kind the question whether the act is done with a felonious intent is one of fact for the jury.   The refusal of the court to give this request was error.   The  defendant in all cases is entitled to have the law governing his case given to the jury for their guidance,. and in this case the question of honest belief and *bona fide* intention should have been submitted to and passed upon by the jury under proper instructions."  See *Com.* v.. *Stebbins,* 8 Gray, 492; 2 Russ.. Crimes (9th ed.) p. 104;. 2 Rosc. Cr. Ev. (8th ed.) p. 1157.   In this case the court charged the jury as follows:    " I  also charge you that it is not material for the prosecution to prove who owned the money, who had the best right to it; the charge is that it was taken from the possession of Nichols, and that is the statute.   The statute, as I have already read to you, forbids the taking of personal prop-erty from the possession of another by means of force or fear; that is, taking it from his person. ·  It is sufficient. taking from the person if the evidence convinces you that the party having personal property in his possession is put in fear, or compelled to lay it down, surrender it up, give it to another, or lay it down where the other person may take it up, or where any other person may take it up.   It is. sufficient if he is compelled to part with his possession of

it, being put in fear, or if it is forcibly taken from off his person; either is a sufficient taking from the person. In this case I charge you that if Nichols had this money in his possession, and the defendant, by putting him in fear, compelled him to either surrender it up or compelled him to permit the defendant to take it out of his pocket or off his person, it is an offense under the statute, provided it was committed within the time and at the place designated in the indictment." Under the authorities, we think the instruction is incorrect. To constitute the offense of robbery, there must be—*First,* a taking of the property; *second,* the taking must be with a felonious intent; *third,* it must be from the person or presence of another; *fourth,* against his will; and, *fifth,* accomplished by means of force or fear. 3 Greenl. Ev. § 223. And, if either of these elements is lacking, the offense cannot be robbery. We are of the opinion that it was material, and the burden of proof was on the prosecution to prove the money was owned by some person other than the defendant, for, if the money belonged to him, and it was wrongfully in the possession of another, he would not be guilty of robbery, as the *animus furandi* would be wanting. For the reasons above set forth, we are of opinion that the motion for a new trial should have been allowed. The evidence excluded and the charge with reference to the felonious intent were clearly erroneous, and prejudicial to the rights of the appellant; and the case is therefore reversed, and a new trial granted.

BARTCH, J., concurs.