William G. PETUSKEY, Robert A. Bullough, Clinton M. Black and Farrol R. Lambert, Plaintiffs,

v.

George D. CLYDE, as Governor of the State of Utah; Lamont F. Toronto, as Secretary of State of the State of Utah; Sherman J. Preece, as Auditor of the State of Utah; Sharp M. Larsen, as Treasurer of the State of Utah; A. Pratt Kesler, as Attorney General of the State of Utah; Alvin Keddington, as County Clerk of the County of Salt Lake, State of Utah; C. W. Brady, as County Commissioner of Salt Lake County, State of Utah; Edwin Q. Cannon, as County Commissioner of Salt Lake County, State of Utah; and Marvin G. Jenson, as County Commissioner of Salt Lake County, State of Utah, Defendants.

Civ. No. C7-63.

United States District Court
D. Utah,
Central Division.
Sept. 12, 1964.

John S. Boyden, Salt Lake City, Utah, for plaintiffs.

A. Pratt Kesler, Atty. Gen. of State of Utah, and Ronald N. Boyce, Chief Asst. Atty. Gen. of State of Utah, for defendants George D. Clyde, Lamont F. Toronto, Sherman J. Preece, Sharp M. Larsen and A. Pratt Kesler.

Grover A. Giles, Salt Lake County Atty., and James A. McIntosh, Deputy County Atty., for defendants Alvin Keddington, C. W. Brady, Edwin Q. Cannon and Marvin G. Jenson.

Before LEWIS, Circuit Judge, and RITTER and CHRISTENSEN, District Judges.

LEWIS, Circuit Judge.

This case was originally filed on January 16, 1963, by plaintiffs as a representative action wherein they sought for themselves as citizens of the United States and of the State of Utah, and as duly qualified voters in Salt Lake County, Utah, and for all other voters in the State of Utah who were similarly situated, a declaration that the provisions of Title 36, U.C.A.1963, as amended by the Laws of Utah 1955, were violative of the Fourteenth Amendment to the Constitution of the United States as an invalid apportionment statute pertaining to the election of members to both the Utah State Senate and House of Representatives. The defendants were named in their respective capacities as public officers and officials of the State of Utah charged by law with particular duties respecting the election of members of the Utah Senate and House of Representatives. Since the prayer of plaintiffs' complaint sought the additional relief of injunctive restraint against the enforcement of a state statute and the action of state officers charged with the duty of enforcement, this statutory three-judge court was duly convened. 28 U.S.C. §§ 2281, 2284.

During the pendency of the action the Utah State Legislature made further amendments to the subject statutes which, with the approval of the Governor, became effective as the law of Utah during May, 1963. By leave of this court plaintiffs were allowed to file a supplemental complaint directing their contentions to what may be designated as the Reapportionment Act of 1963, Title 36, U.C.A., as amended by Laws of Utah 1963. After due response by defendants the case became at issue during May, 1963. In recognition of the potential

impact that a decision in the case might have upon the governmental affairs of Utah, this court upon its own motion abstained from hearing the case upon the merits pending the decisions of the United States Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620, and Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632, decided on June 15, 1964, which held, *inter alia*, that both houses of a bicameral state legislature must be apportioned substantially on a population basis. The crystallization of federal constitutional requirements as held in the cited cases made it this court's clear duty to give immediate consideration to plaintffs' contention, and the case was heard and submitted upon August 3, 1964.

Jurisdiction in this court rests upon 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1343(3), the Civil Rights Acts; a justiciable issue exists under the rule of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; the parties having agreed that there is no genuine issue as to any material fact, the case is ripe for summary judgment. Rule 56, Fed.R. Civ.P.

The Utah Reapportionment Act of 1963 provides for a state Senate consisting of twenty-seven members elected from eighteen designated senatorial districts. consisting of one or more counties. See App. A. The act states that representation shall be determined upon the basis of one senator for the first twenty thousand inhabitants, or major fraction thereof, and one additional senator for each additional sixty-one thousand inhabitants, or major fraction thereof, residing within the senatorial district. The act is a. patent and probably successful attempt [1] to apportion the senate in accordance with the Utah Constitution which provides that there shall be a maximum of thirty senators in the Senate (art. IX,. sec. 3), that when two or more counties. form one district they must be contiguous, that no county shall be divided into more than one district unless such county contains sufficient population within itself to form two or more districts, and that no part of a county shall be united with another county in the formation of a senatorial district (art. IX, sec. 4).[2]

To test the validity of the senatorial apportionment the population distribution in Utah must be applied to the various districts and the number of senators elected from each district. See App. B. The senatorial districts average 32,986 [3] inhabitants each, but District Three, Rich, Morgan, and Summit Counties, and District Eighteen, Washington County, each with one senator,

1. See Parkinson v. Watson, 4 Utah 2d 191, 291 P.2d 400.

2. The provisions of the Utah Constitution that are pertinent to the present case are as follows:
   "ARTICLE IX * * *
   "Sec. 3. The Senate shall consist of eighteen members, and the House of Representatives of forty-five members. The Legislature may increase the number of senators and representatives, but the senators shall never exceed thirty in number, and the number of representatives shall never be less than twice nor greater than three times the number of senators.

   "Sec. 4. When more than one county shall constitute a senatorial district, such counties shall be contiguous, and no county shall be divided in the formation of such districts unless such county contains sufficient population within itself to form two or more districts, nor shall a part of any county be united with any other county in forming any district. * * * [I]n any future apportionment made by the Legislature, each county shall be entitled to at least one representative."

3. All population figures used are based on the 1960 census as enumerated by the United States Government and are not disputed.

have 10,195 and 10,271 inhabitants respectively, while District Four, Weber County, with two senators, has 55,372 inhabitants per senator, and District Six, Salt Lake County, with seven senators, has 54,719 inhabitants per senator. The ratio of inhabitants per senator between the highest and lowest districts is 5.4 to one. The larger districts, those with two or more senators, average 51,195 inhabitants per senator as compared with an average of 16,078 in the smaller districts, a ratio of 3.2 to one. As a result, districts containing 225,097 inhabitants, or 25.3 per cent of the state's population, can elect a majority of the state Senate.

■ Without laboring the application of simple mathematics to the senatorial apportionment, it is clearly apparent that representation is not presently based upon substantial equality in population and that there exists a gross and untenable dilution of the weight accorded the individual votes of citizens of Utah who reside in the more populous counties and districts. The disparity between the effectiveness of citizens' votes, reaching as it does a ratio exceeding five to one, is an invidious discrimination denying to the people of Utah the equal protection of its law and thus violating the compulsion of the Fourteenth Amendment to the Constitution of the United States. We hold, therefore, that the Reapportionment Act of 1963, as it pertains to the apportionment of the Utah State Senate, is federally unconstitutional.

Under the 1963 act, representation in the House of Representatives is on the basis of one representative for each sixteen thousand inhabitants, or major fraction thereof, residing within the district, except that each county must have at least one representative. See App. C. The act provides for a total of sixty-nine representatives from Utah's twenty-nine counties and is consistent with the Utah Constitution, which states that each county must have at least one representative (art. IX, sec. 4), and that the House of Representatives shall have at least two and no more than three times as many members as there are senators (art. IX, sec. 3), limiting the membership of the House to ninety because of the Senate limitation to thirty (art. IX, sec. 3). The House districts average 12,908 inhabitants each, but Districts Twenty-one and Twenty-nine, Piute and Daggett Counties, have only 1,436 and 1,164 inhabitants respectively, compared with 21,135 in District Fifteen, Carbon County, and an average of 17,894 for each of the two representatives of District Two, Cache County. The ratio of inhabitants per representative of the highest to the lowest populated district is 18.2 to one, and districts with a total population of 336,400, or 37.8 per cent of the state's population, can elect a majority in the House of Representatives. See App. D.

■ Again, we find it unnecessary to elaborate upon the obvious and simple fact that the House of Representatives is not presently apportioned according to substantial equality in population and that accordingly the equal protection of law is denied to the state's citizens. We hold that the Reapportionment Act of 1963, as it pertains to the apportionment of the House of Representatives, is federally unconstitutional.

■ In enacting the Reapportionment Act of 1963, the state legislature considered itself bound by the restrictions affecting the subject matter contained in the Utah Constitution. And this was understandably so for it is their dual duty to observe the constitutional limitations contained in both the Constitution of Utah and the Constitution of the United States in all instances where such course is possible. In the case at bar it was not possible. For example, it is mathematically impossible to apportion upon a population basis a House of Representatives composed of not more than ninety members and with each county having at least one member. Thus, in application, the restrictive provisions of the Utah Constitution are in irreconcil-

able conflict with the Constitution of the United States and, being so, are themselves federally unconstitutional and must be considered as totally void in application under the supremacy clause of the Constitution of the United States.[4] And we so hold.

■■■■■ To what relief, then, are plaintiffs and others similarly situated entitled? The answer may be simply stated: To a prompt, effective and complete reapportionment of both houses of the Utah Legislature upon a basis premised upon substantial equality of population. The powers of this court to effectuate such relief are beyond doubt but should be exercised only in furtherance of the public good after deliberate consideration of the total equities inherent in the problem. In such regard we note both the imminence of the pending general election [5] and the regularly scheduled session of the Utah Legislature in 1965. The primary duty to establish a valid representation in the legislature lies with those officers of the State of Utah charged with the enactment of its law and does not lie with this court. Consequently, we think that the present welfare of the people of the State of Utah may best be served by withholding any immediate affirmative judicial relief in order to allow the legislature of the state to give its consideration to the complexities of apportionment and to enact at their first opportunity [6] a valid law which meets the demands of the Constitution of the United States and which in their solemn judgment will best serve the welfare of the people of Utah. Should the legislature fail, refuse or be unable to reapportion validly it will be this court's duty to give further consideration to the necessity of giving plaintiffs injunctive and affirmative relief by judicial decree. And for such purpose jurisdiction will be retained.

■■■ We do not deem it necessary or desirable to set out herein with particularity any specific plan of reapportionment that would meet federal constitutional requirements. To do so would be but to invite advocacy of such a plan as "court approved" or criticism of such plan as "court dictated." Such is not the judicial function, for an almost unlimited number of greatly varying plans can satisfy the federal mandate. The legislature is faced with a discretionary problem limited only by the principle that apportionment must be based upon substantial equality of population with such minor deviations as "are free from any taint of arbitrariness or discrimination." Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 1458, 12 L.Ed.2d 620. Nor will this court now attempt to state in precise mathematical language the constitutionally permissible bounds of deviation from apportionment based strictly on population, ibid., but we call attention to the decisions of other courts indicating that any disparity greater than fifty per cent of the norm will be subject to

---

4. Article VI, clause 2.
   "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

5. Plaintiffs seek no relief that would in any way affect the coming election.

6. We note here the somewhat widespread public statements of some persons who are, or may be, charged with the responsibility of law-making that reapportionment is a subject upon which they are "willing to drag their feet" or to "await potential changes in the federal law or Constitution." It is sufficient to say that the denial of the equal protection of law to the citizens of Utah is not a situation that can tolerate a "dragging of feet," for to suspend a constitutional right by delay is to deny that right. Similarly, it is the duty of the legislature as well as the duty of this court to approach the problem of apportionment under existing law.

close judicial scrutiny and may be shown to be a result of factors other than substantial equality of population and therefore impermissible. Compare Sincock v. Duffy, D.Del., 215 F.Supp. 169, 190, affirmed and remanded, Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449; Drew v. Scranton, M.D.Pa., 229 F.Supp. 310, 325, passim.

In summary we hold:

1. That the Reapportionment Act of 1963 is unconstitutional as violative of the Fourteenth Amendment to the Constitution of the United States in its apportionment of representation in the Utah State Senate.

2. That the Reapportionment Act of 1963 is unconstitutional as violative of the Fourteenth Amendment to the Constitution of the United States in its apportionment of representation in the Utah State House of Representatives.

3. That to the extent that the provisions of Article IX of the Utah Constitution compel an apportionment of representation in the Utah Legislature that is violative of the Constitution of the United States, such provisions of the Utah Constitution are themselves unconstitutional and should not be regarded as mandatory upon the legislature of Utah when such provisions are considered either singly or in combination.

4. That the judgment of this court as reflected in 1, 2 and 3, supra, shall be a final judgment and as such subject to immediate review at the instance of the parties.

5. That jurisdiction of the case in all other aspects, including that to grant injunctive and affirmative relief to plaintiffs, is retained by this court.

A judgment will be entered accordingly.

## APPENDIX A.

### SENATE DISTRICTING AS PROVIDED BY 1963 REAPPORTIONMENT ACT.

Title 36, U.C.A., section 36–1–1: "Representation in senate. * * *

"First District: Box Elder County—one senator

"Second District: Cache County—one senator

"Third District: Rich, Morgan, and Summit Counties—one senator

"Fourth District: Weber County—two senators

"Fifth District: Duchesne and Wasatch Counties—one senator

"Sixth District: Salt Lake County—seven senators

"Seventh District: Utah County—two senators

"Eighth District: Beaver and Millard Counties—one senator

"Ninth District: Sanpete County—one senator

"Tenth District: Emery, Wayne, Piute, Garfield, and Kane Counties—one senator

"Eleventh District: Iron County—one senator

"Twelfth District: Grand and San Juan Counties—one senator

"Thirteenth District: Juab and Tooele Counties—one senator

"Fourteenth District: Carbon County—one senator

"Fifteenth District: Davis County—two senators

"Sixteenth District: Uintah and Daggett Counties—one senator

"Seventeenth District: Sevier County—one senator

"Eighteenth District: Washington County—one senator"

## APPENDIX B.

### POPULATION OF SENATE DISTRICTS UNDER 1963 REAPPORTIONMENT ACT.

| Senate Districts | County | Population | Number of Senators |
|---|---|---|---|
| 1 | Box Elder | 25,061 | 1 |
| 2 | Cache | 35,788 | 1 |
| 3 | Rich, Morgan, Summit | 10,195 | 1 |
| 4 | Weber | 110,744 | 2 |
| 5 | Duchesne, Wasatch | 12,487 | 1 |
| 6 | Salt Lake | 383,035 | 7 |
| 7 | Utah | 106,991 | 2 |
| 8 | Beaver, Millard | 12,197 | 1 |
| 9 | Sanpete | 11,053 | 1 |
| 10 | Emery, Wayne, Piute, Garfield, Kane | 14,954 | 1 |
| 11 | Iron | 10,795 | 1 |
| 12 | Grand, San Juan | 15,385 | 1 |
| 13 | Juab, Tooele | 22,465 | 1 |
| 14 | Carbon | 21,135 | 1 |
| 15 | Davis | 64,760 | 2 |
| 16 | Uintah, Daggett | 12,746 | 1 |
| 17 | Sevier | 10,565 | 1 |
| 18 | Washington | 10,271 | 1 |

## APPENDIX C.

### HOUSE OF REPRESENTATIVES DISTRICTING AS PROVIDED IN 1963 REAPPORTIONMENT ACT.

Title 36, U.C.A., section 36–1–2 "Representation in house of representatives. * * *

"First District: Box Elder County—two representatives
"Second District: Cache County—two representatives
"Third District: Rich County—one representative
"Fourth District: Weber County—seven representatives
"Fifth District: Morgan County—one representative
"Sixth District: Davis County—four representatives
"Seventh District: Tooele County—one representative
"Eighth District: Salt Lake County—twenty-four representatives
"Ninth District: Summit County—one representative
"Tenth District: Wasatch County—one representative
"Eleventh District: Utah County—seven representatives
"Twelfth District: Uintah County—one representative
"Thirteenth District: Juab County—one representative
"Fourteenth District: Sanpete County—one representative
"Fifteenth District: Carbon County—one representative

"Sixteenth District: Emery County—one representative
"Seventeenth District: Grand County—one representative
"Eighteenth District: Sevier County—one representative
"Nineteenth District: Millard County—one representative
"Twentieth District: Beaver County—one representative
"Twenty-first District: Piute County—one representative
"Twenty-second District: Wayne County—one representative
"Twenty-third District: Garfield County—one representative
"Twenty-fourth District: Iron County—one representative
"Twenty-fifth District: Washington County—one representative
"Twenty-sixth District: Kane County—one representative
"Twenty-seventh District: San Juan County—one representative
"Twenty-eighth District: Duchesne County—one representative
"Twenty-ninth District: Daggett County—one representative"

## APPENDIX D.

### POPULATION OF HOUSE OF REPRESENTATIVES DISTRICTS UNDER 1963 REAPPORTIONMENT ACT.

| Representative Districts | County | Population | Number of Representatives |
|---|---|---|---|
| 1 | Box Elder | 25,061 | 2 |
| 2 | Cache | 35,788 | 2 |
| 3 | Rich | 1,685 | 1 |
| 4 | Weber | 110,744 | 7 |
| 5 | Morgan | 2,837 | 1 |
| 6 | Davis | 64,760 | 4 |
| 7 | Tooele | 17,868 | 1 |
| 8 | Salt Lake | 383,035 | 24 |
| 9 | Summit | 5,673 | 1 |
| 10 | Wasatch | 5,308 | 1 |
| 11 | Utah | 106,991 | 7 |
| 12 | Uintah | 11,582 | 1 |
| 13 | Juab | 4,597 | 1 |
| 14 | Sanpete | 11,053 | 1 |
| 15 | Carbon | 21,135 | 1 |
| 16 | Emery | 5,546 | 1 |
| 17 | Grand | 6,345 | 1 |
| 18 | Sevier | 10,565 | 1 |
| 19 | Millard | 7,866 | 1 |
| 20 | Beaver | 4,331 | 1 |
| 21 | Piute | 1,436 | 1 |
| 22 | Wayne | 1,728 | 1 |
| 23 | Garfield | 3,577 | 1 |
| 24 | Iron | 10,795 | 1 |
| 25 | Washington | 10,271 | 1 |
| 26 | Kane | 2,667 | 1 |
| 27 | San Juan | 9,040 | 1 |
| 28 | Duchesne | 7,179 | 1 |
| 29 | Daggett | 1,164 | 1 |

RITTER, District Judge (concurring in part and dissenting in part).

The Supreme Court of the United States now has made crystal clear that the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States requires "as a basic constitutional standard" that "the seats in both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State."

The Court's mandate is not expressed in precisely measured terms. The principle is laid down in broad terms of "an honest and good faith effort" to construct districts in both houses of the legislature "as nearly of equal population as is practicable."

The Court said:

"By holding that as a federal constitutional requisite both houses of a state legislature must be apportioned on a population basis, we mean that the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement."

And the Court said:

"For the present, we deem it expedient not to attempt to spell out any precise constitutional tests. What is marginally permissible in one State may be unsatisfactory in another, depending on the particular circumstances of the case. Developing a body of doctrine on a case-by-case basis appears to us to provide the most satisfactory means of arriving at detailed constitutional requirements in the area of state legislative apportionment." Reynolds v. Sims, 377 U.S. 533, at pp. 577–578, 84 S.Ct. 1362 at pp. 1389–1390, 12 L.Ed.2d 506, decided June 15, 1964.

It is by these broad principles that we are bound, the legislature and the courts alike.

I fully agree that it is the primary duty of the Utah Legislature to reapportion so as to establish a valid representation in the legislature. But, it has never done so, not once, since statehood.

This State has a long history of frustrated attempts to reapportion.

That history is summarized by the Utah Supreme Court in Parkinson v. Watson, 4 Utah 2d 191, 291 P.2d 400. The highest court of the State of Utah says:

"The difficulties in securing enactment of reapportioning legislation have been such that, notwithstanding the directive that it be done following each federal census, only three such acts have been passed since Statehood, and the 1955 Act is the first since 1931. It is the culmination of efforts made during each regular legislative session since 1941, a total of 20 bills having been introduced in attempting to comply with that requirement. This failure is not chargeable to partisanship of the major political parties, as each has controlled various of the legislative sessions during that period. Rather it seems to have been due to the refusal of representatives of the rural areas, which had a majority, 31 to 29 in the house and 12 to 11 in the senate, to agree to any reapportionment of the senate on a strictly population basis [4] which would have vested control

"4. This seems generally true but the alignment on this issue does not appear to have ever been exactly on such basis.

of both houses of the legislature in the 'Wasatch Front' urban counties.

"After further abortive attempts in the 1951 session, the conflicting bills were referred to the Legislative Council. The Council suggested several possible compromises. A bill patterned upon its report, and another compromise bill were introduced in the 1953 session. Again neither of these proved palatable to the rural interests of the state. Upon the legislature's failure to agree in that session, a resolution proposing a constitutional amendment was passed, submitting the matter to the people in the 1954 election. It would have given each county one senator regardless of size, and although it carried in 23 of the 29 counties of the state, it was rejected by an overwhelming majority of the popular vote. Finally the opposing interests resolved their differences by adopting the 1955 Act, under review here."

The state constitution commands that the legislature "shall revise and adjust the apportionment for senators and representatives" following each federal census. Article IX, Sec. 2.

Notwithstanding this mandate in the state constitution, only four such acts have been passed since Utah was admitted to the Union, January 4, 1896.

The Supreme Court of Utah says this failure is not chargeable to partisanship of the major political parties.

"Rather it seems to have been due to the refusal of representatives of the rural areas, which had a majority 31 to 29 in the house and 12 to 11 in the senate, to agree to *any* reapportionment of the senate on a strictly population basis, which would have vested control of both houses of the legislature in the 'Wasatch Front' urban counties." (Emphasis added).

The "basic constitutional standard" of Reynolds v. Sims is that, "an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State."

An individual's right to vote for a state senator who represents 55,000 inhabitants (Weber and Salt Lake Counties) is surely substantially diluted and impaired when its weight is compared with votes of citizens whose senator represents only 10,000 inhabitants. (District Three, Rich, Morgan and Summit, and District Eighteen, Washington County). One person is given 5½ times the voting power of another person merely because he lives in a rural area.

Under the 1963 Act, and based upon the 1960 census, 25.3 percent of the state's population can elect a majority of the state senate.[1]

An individual's right to vote for a state representative who represents 21,135 inhabitants, (District Fifteen Carbon County) is assuredly substantially diluted and impaired when its weight is compared with votes of citizens whose representative represents only 1,164 inhabitants. (District Twenty Nine, Daggett County). Again, one person is given 18 times the voting power of another person merely because he lives in a rural area or in the smallest county.

And 37.8% of the state's population can elect a majority in the House of Representatives. This disparity has probably widened because of population changes in the four years since the census.

I am in agreement with the court that Article IX of the Utah Constitution is unconstitutional insofar as each county is given a representative regardless of population. Again, the Legislative Re-

1. These disparities have probably widened in the four years since the census because of population increases in the four "Wasatch Front" counties and decreases in the population in some of the other counties. It is a matter of general public knowledge that Utah's population is expected to reach 1,000,000 near the end of September 1964, and that 60% of that population is found in Weber, Davis, Salt Lake and Utah Counties. Salt Lake Tribune, September 3, 1964. Very likely now about 21% of the state's population can elect a majority of the state senate.

apportionment Act of 1963 is unconstitutional because it dilutes and impairs the weight of an individual's right to vote when compared to the votes of citizens living in other parts of the state.

Unless the Legislative Reapportionment Act of 1963 is held unconstitutional, the legislature, as population grows, could give control of one or both houses of the legislature to increasingly smaller segments of the population.

The historical futility of legislative acts to apportion lead me to disagree with that portion of the opinion which says "We do not deem it necessary or desirable to set out herein with particularity any specific plan of reapportionment that would meet federal constitutional requirements", and following.

I do not agree that we should withhold from the legislature our views with respect to its reapportionment. If we leave the legislature to guess what the court thinks about the problem, the end is not difficult to foresee. The old conflict between the rural and urban factions will result, as it always has, in delay, frustration, and another unconstitutional reapportionment. Those who have a sincere belief and desire that a valid representation should be established by the legislature and not by this court will be disappointed.[3]

Chief Justice Warren, speaking for the court in Reynolds v. Sims, 377 U.S. at p. 586, 84 S.Ct. at p. 1394, said the District Court acted "in a most proper and commendable manner" in, among other things, "initially stating some of its views to provide guidelines for legislative action."

The legislature met from January 14 to March 17, 1963, and again failed to agree to *any* reapportionment on a strictly population basis.

Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, had been decided March 26, 1962. The line of cases stemming from Baker v. Carr were in the mill, including Reynolds v. Sims. A new course of decision was in the making, plain to be seen to anyone who would read. The writing was on the wall. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, was decided March 18, 1963, in which the court said:

"The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments, can mean only one thing—one person, one vote."

The present action was filed January 16, 1963, near the beginning of the legislative session.

As Judge Lewis indicates, this court upon its own motion abstained from hearing the case pending the decisions of the Supreme Court in Reynolds v. Sims, and related cases.

One reason for this abstention was to give the legislature an opportunity to apportion constitutionally.

Well, they didn't. The pendency of this action in this court, and of the many actions in the United States Supreme Court and other courts did not have the desired effect upon the legislature. The legislators met in 1963 and came out with a formula that is patently wrong.

In my view, it is the duty of the court to give the legislature some guidance. In other states where such guidance was withheld, the problem has been compounded.

I do not agree that "an almost unlimited number of greatly varying plans can satisfy the federal mandate."

Nor, do I agree to the invitation to commit a 50% error in the language. "Nor will this court now attempt to

3. In my judgment, many constitutional officers of the State of Utah recognize the federal constitutional mandate and are making helpful, good faith efforts to obtain a valid legislative apportionment. Prominent among those is Chief Assistant Attorney General Ronald N. Boyce. Also, among those is the Utah State Legislative Council.

The widespread publicity indicates the legislators' interest in the court's views.

state in precise mathematical language the constitutionally permissible bounds of deviation from apportionment based strictly on population, ibid., but we call attention to the decisions of other courts indicating that any disparity greater than fifty per cent of the norm will be subject to close judicial scrutiny and may be shown to be a result of factors other than substantial equality of population and therefore impermissible."

This is not Reynolds v. Sims. The standard there announced is not that you can make a 50% error, but that you do the best job you can on the basis of representation by population.

So, there is attached hereto a plan for the reapportionment of the Utah State Senate with 28 seats, and for the Utah House of Representatives with 69 seats.

Representation in the Senate is based upon 1 Senator for approximately each 32,000 inhabitants.

Representation in the House of Representatives is based upon 1 Representative for approximately each 13,000 inhabitants.

The State Constitution is complied with in that the Senators do not exceed 30 and the Representatives are not less than twice nor greater than three times the number of Senators.

Also, when more than one county constitutes a senatorial district, such counties are contiguous; no county is divided in the formation of the districts; and no part of any county is united with any other county in forming any district.

These suggestions for reapportionment are made with an eye to the least dislocation. County lines are maintained. And, the Utah State Constitution is complied with, with the exception of those provisions which the court is holding unconstitutional, in Article IX, particularly Section 4, which gives each county one representative.

There are bound to be some disparities. The Supreme Court anticipated this and says mathematical exactness or precision is not necessary.

1. It is noted that Weber, with 37,000 for each senator, Utah and Cache with 36,000 for each of their senators, are high i. e., a little under-represented.

2. While District Three, including Rich, Morgan, Summit, Wasatch, Duchesne and Daggett, is low, i. e., over-represented, with one senator. However, there are six counties put together to get the figure 24,000. One senator for six counties population-wise is hardly to be regarded as offensive over-representation. Moreover, we can take judicial notice that this is one rural area where it is reasonable to conclude that population may increase. The factors in this increase are the development of the Flaming Gorge area in Duchesne County and vicinity, the Central Utah Project and the Wasatch Mountain Park and Park City developments in Wasatch and Summit Counties.

3. There is a disparity between Salt Lake County and Davis County, each with 32,000 for each senator, and Weber, with 37,000 and Utah with 36,000.

This disparity is calculated to diminish because of the rapid growth in the southern part of Salt Lake County and in Davis County. There isn't much of a disparity, anyway. Davis has 2 senate seats now. We leave it the same.

4. Box Elder County is over-represented. It is given 1 senator for about 25,000 persons. Box Elder presents a problem because there is no county contiguous to it with which it can be combined and maintain county lines.

I offer these suggestions, as I think it is my duty to do, with the hope that they may be helpful and provide some general guidelines for the legislators and state officers.

This is only one plan and may not be the best. The legislature need not

follow it if they choose not to do so. However some plan, perhaps somewhat like this, is going to be necessary to meet the constitutional mandate.

REAPPORTIONMENT SCHEDULE — STATE SENATE — 28 SEATS

| SENATE DISTRICT | COUNTY | POPULATION | APPROXIMATE POPULATION PER SEAT | NUMBER OF SENATORS |
|---|---|---|---|---|
| 1 | Box Elder | 25,061 | 25,000 | 1 |
| 2 | Cache | 35,788 | 36,000 | 1 |
| 3 | Rich | 1,685 | | |
| | Morgan | 2,837 | | |
| | Summit | 5,673 | | |
| | Wasatch | 5,308 | | |
| | Duchesne | 7,179 | | |
| | Daggett | 1,164 | 24,000 | 1 |
| 4 | Weber | 110,744 | 37,000 | 3 |
| 5 | Davis | 64,760 | 32,000 | 2 |
| 6 | Salt Lake | 383,035 | 32,000 | 12 |
| 7 | Utah | 106,991 | 36,000 | 3 |
| 8 | Tooele | 17,868 | | |
| | Juab | 4,597 | | |
| | Millard | 7,866 | 30,000 | 1 |
| 9 | Beaver | 4,331 | | |
| | Iron | 10,795 | | |
| | Washington | 10,271 | | |
| | Kane | 2,667 | 28,000 | 1 |
| 10 | Carbon | 21,135 | | |
| | Emery | 5,546 | 27,000 | 1 |
| 11 | Sanpete | 11,053 | | |
| | Piute | 1,436 | | |
| | Sevier | 10,565 | | |
| | Garfield | 3,577 | | |
| | Wayne | 1,728 | 28,000 | 1 |
| 12 | Grand | 6,345 | | |
| | San Juan | 9,040 | | |
| | Uintah | 11,582 | 27,000 | 1 |

Note: Population figures are based upon the 1960 U. S. Census.

## REPRESENTATION IN THE STATE SENATE

Representation in the Senate of the State shall be as follows:

First Senatorial District:
Box Elder County      — 1 Senator

Second Senatorial District:
Cache County      — 1 "

Third Senatorial District:
Rich, Morgan, Summit, Wasatch,
Duchesne and Daggett Counties      — 1 "

Fourth Senatorial District:
Weber County      — 3 Senators

Fifth Senatorial District:
Davis County      — 2 "

Sixth Senatorial District:
Salt Lake County      — 12 "

Seventh Senatorial District:
Utah County      — 3 "

Eighth Senatorial District:
Tooele, Juab and Millard Counties      — 1 Senator

Ninth Senatorial District:
Beaver, Iron, Washington and
Kane Counties      — 1 "

Tenth Senatorial District:
Carbon and Emery Counties      — 1 "

Eleventh Senatorial District:
Sanpete, Piute, Sevier, Garfield
and Wayne Counties      — 1 "

Twelfth Senatorial District:
Grand, San Juan and Uintah Counties      — 1 "

REAPPORTIONMENT SCHEDULE—HOUSE OF REPRESENTA-
TIVES — 69 SEATS

| HOUSE DISTRICT | COUNTY | POPULATION | APPROXIMATE POPULATION PER SEAT | NUMBER OF REPRESEN-TATIVES |
|---|---|---|---|---|
| 1 | Box Elder | 25,061 | 13,000 | 2 |
| 2 | Cache | 35,788 | 12,000 | 3 |
| 3 | Rich | 1,685 | | |
| | Morgan | 2,837 | | |
| | Summit | 5,673 | 10,000 | 1 |
| 4 | Weber | 110,744 | 13,000 | 9 |
| 5 | Davis | 64,760 | 13,000 | 5 |
| 6 | Salt Lake | 383,035 | 13,000 | 29 |
| 7 | Tooele | 17,868 | 18,000 | 1 |
| 8 | Utah | 106,991 | 13,000 | 8 |
| 9 | Wasatch | 5,308 | | |
| | Duchesne | 7,179 | 12,000 | 1 |
| 10 | Uintah | 11,582 | | |
| | Daggett | 1,164 | 13,000 | 1 |
| 11 | Sanpete | 11,053 | | |
| | Juab | 4,597 | 15,000 | 1 |
| 12 | Millard | 7,866 | | |
| | Beaver | 4,331 | 12,000 | 1 |
| 13 | Carbon | 21,135 | 10,000 | 2 |
| 14 | Grand | 6,345 | | |
| | Emery | 5,546 | 12,000 | 1 |
| 15 | Sevier | 10,565 | | |
| | Piute | 1,436 | 12,000 | 1 |
| 16 | Iron | 10,795 | | |
| | Garfield | 3,577 | 14,000 | 1 |
| 17 | Washington | 10,271 | | |
| | Kane | 2,667 | 13,000 | 1 |
| 18 | San Juan | 9,040 | | |
| | Wayne | 1,729 | 12,000 | 1 |

Note: Population figures are based upon the 1960 U. S. Census.

# REPRESENTATION IN THE HOUSE OF REPRESENTATIVES

Representation in the State House of Representatives shall be as follows:

First Representative District:
Box Elder County — 2 Representatives

Second Representative District:
Cache County — 3 "

Third Representative District:
Rich, Morgan and Summit Counties — 1 Representative

Fourth Representative District
Weber County — 9 Representatives

Fifth Representative District:
Davis County — 5 "

Sixth Representative District:
Salt Lake County — 29 "

Seventh Representative District:
Tooele County — 1 Representative

Eighth Representative District:
Utah County — 8 Representatives

Ninth Representative District:
Wasatch and Duchesne Counties — 1 Representative

Tenth Representative District:
Uintah and Daggett Counties — 1 "

Eleventh Representative District:
Sanpete and Juab Counties — 1 "

Twelfth Representative District:
Beaver and Millard Counties — 1 "

Thirteenth Representative District:
Carbon County — 2 Representatives

Fourteenth Representative District:
Grand and Emery Counties — 1 Representative

Fifteenth Representative District:
Sevier and Piute Counties — 1 "

Sixteenth Representative District:
Iron and Garfield Counties — 1 "

Seventeenth Representative District:
Washington and Kane Counties — 1 "

Eighteenth Representative District:
San Juan and Wayne Counties — 1 "

SENATORIAL
DISTRICTS

UTAH
COUNTY OUTLINE

SCALE
0  10  20  30  40

PEMBROKE COMPANY 11001

HOUSE OF REPRESENTATIVES

UTAH
COUNTY OUTLINE

SCALE
0  10  20  30  40

BOX ELDER

CACHE    RICH

WEBER

MORGAN

DAVIS

PEMBROKE COMPANY 11001

TOOELE

SALT LAKE

SUMMIT

DAGGETT

WASATCH

DUCHESNE

UINTA

JUAB

UTAH

MILLARD

CARBON

GRAND

EMERY

SANPETE

SEVIER

BEAVER

PIUTE    WAYNE

SAN JUAN

IRON

GARFIELD

WASHINGTON

KANE