William G. **PETUSKEY**, Robert A. Bullough, Clinton M. Black and Farrol R. Lambert, Plaintiffs, and
Brian Florence, Petitioner in Intervention,
v.
Calvin L. **RAMPTON**, as Governor of the State of Utah; Clyde L. Miller, as Secretary of State of the State of Utah, Sharp M. Larsen, as Auditor of the State of Utah; Linn C. Baker, as Treasurer of the State of Utah; Phil L. Hansen, as Attorney General of the State of Utah; Jacob A. Weiler, as County Clerk of the County of Salt Lake, State of Utah; John Preston Creer, as County Commissioner of Salt Lake County, State of Utah; William G. Larsen, as County Commissioner of Salt Lake County, State of Utah, and Marvin G. Jenson, as County Commissioner of Salt Lake County, State of Utah, Defendants.

No. C 7–63.

United States District Court
D. Utah, C. D.

July 8, 1969.

Motion Granted Dec. 15, 1969.
See 90 S.Ct. 475.

**232**

See Opinion at 307 Fed. Supp. 235.

A. Wally Sandack, William J. Lockhart, Salt Lake City, Utah, for plaintiffs and petitioner in intervention.

Vernon B. Romney, Atty. Gen., Salt Lake City, Utah, for defendants.

Before LEWIS, Circuit Judge, RITTER, Chief District Judge, and CHRISTENSEN, District Judge.

PER CURIAM.

The restraining order heretofore issued upon the motion of Brian Florence is dissolved; his motion for leave to file a supplemental complaint is denied; his motion to intervene herein is denied, and this three-judge court is hereby dissolved, the purposes for which it was convened and for which it acquired and retained jurisdiction being deemed served, and the application to intervene being neither timely, appropriate nor sufficient for those purposes.

Each member of the court reserves the right separately to state his views with respect to the issues raised by the petition to intervene and concerning this order in which LEWIS, Circuit Judge, and CHRISTENSEN, District Judge, concur. RITTER, Chief District Judge, dissents.

CHRISTENSEN, District Judge (concurring in denial of petition to intervene).

This case was filed more than six years ago. The plaintiffs sought for themselves as citizens of the United States and of the State of Utah, and as qualified voters in Salt Lake County, and on behalf of all other voters in the State of Utah who were similarly situated, a declaration that Title 36, Utah Code Ann. (1953), as amended, Law of March 7, 1955, ch. 61, [1955] Utah Laws 117, was a violation of the Fourteenth Amendment as an invalid apportionment statute for the election of members of both the Utah State Senate and House of Representatives.

During the pendency of the action, the Utah State Legislature made further amendments to the statute. See Reapportionment Act of 1963, ch. 54, [1963] Utah Laws 296, amending Utah Code Ann. § 36-1-1, 36-1-2 (1953). The question of the validity of these amendments was included by supplemental complaint in an adjudication before a three-judge court which declared after hearing, among other things, that the Reapportionment Act of 1963 violated the Fourteenth Amendment in its apportionment of representation both in the Utah State Senate and in the Utah State House of Representatives. This judgment was made final for purposes of appeal but jurisdiction in all other respects, including jurisdiction to grant injunctive and affirmative relief to plaintiffs, was "retained by this court". Petuskey v. Clyde, 234 F.Supp. 960, 965 (D.Utah 1964).

Thereafter, a further proceeding invoking the jurisdiction so retained by the 1964 judgment was brought with reference to the Reapportionment Act of

1965, ch. 72 [1965] Utah Laws 205, adopted by the Utah State Legislature during its regular session in 1965 and effective May 11, 1965. On July 3, 1965, by reason of transitory provisions and retentions in office under the 1965 Act, the court held the Act unconstitutional but made provisions to correct the inadequacies. Petuskey v. Rampton, 243 F.Supp. 365 (D.Utah 1965).

The Legislature was praised for the action it had taken, it being stated:

> This action of the Legislature is historic. No other Legislature since statehood has constructed legislative districts in both houses so nearly equal in population. This is the end of a long history of frustrated attempts to reapportion, and the beginning of a new era.

243 F.Supp. at 366.

The court further stated:

> In the 1963 session the Legislature enacted a reapportionment act that was patently unconstitutional. And, in the 1965 session they enacted one which denies the state a constitutionally apportioned Legislature until January 1969. This delay is too long.
>
> \*   \*   \*   \*   \*   \*
>
> It is manifest in the 1965 Act that the legislators sought to continue themselves in office until the end of their elected terms, eleven senators until December 31, 1968. And this, in face of the fact that the acts under which they had been elected had been held unconstitutional and moreover were repealed by them. For a very long period of time all efforts to obtain a constitutionally apportioned Legislature in this State have been frustrated. There is now a further unfortunate delay until January 1967 before we shall have a constitutionally apportioned Legislature.

243 F.Supp. at 372, 373.

A decree was entered accordingly by the three-judge court; the Legislature was constituted in accordance with directions of that court; for almost four years thereafter the legality and acts of the Legislature remained without further challenge or question.

The motion to intervene was filed by Brian Florence on June 6, 1969. It challenged the validity of Senate Joint Resolution Number 3 of the 1965 Utah State Legislature. That resolution applied to the Congress of the United States to call a constitutional convention to consider an amendment providing for apportionment of one house of a bicameral state legislature on factors other than population. Based upon this petition a restraining order was issued by the Chief Judge of the District, who was also a member of the three-judge court, upon whose request this court was initially constituted, temporarily restraining the Secretary of State and requiring him to advise Congress that the validity of S.J.R. Number 3, adopted by the 1965 Utah State Legislature, was questioned by this action and that until the validity of the resolution is determined his authority to submit the resolution to Congress is in doubt, and directing him to return said resolution pendente lite.

After hearing and oral argument before the three-judge court, and upon briefs, this restraining order was dissolved by majority action of the court. A motion for leave to file a supplemental complaint raising the same question was denied, the motion to intervene was denied and the three-judge court was dissolved, it being determined that "the purposes for which it was convened and for which it acquired and retained jurisdiction being deemed served, and the application to intervene being neither timely, appropriate nor sufficient for those purposes." Each member of the court reserved the right separately to state his views with respect to the issues raised by the petition to intervene and with respect to the order of the court in which Judge Lewis and Judge Christensen concurred; Chief Judge Ritter dissented.

The untimeliness of the petition to intervene and the untimeliness of any petition for the filing of supplemental

pleadings with reference to the 1965 resolution in question is obvious and fully justifies and requires the dismissal of the petition.

But beyond the question of timeliness, when the last decision of this court is examined it will be seen that we took express notice of the existence of this resolution. We accepted it as an established fact. We did not then consider it necessary to question the resolution, nor did any party or member of the class, but we did vindicate our order with respect to any constitutional amendment by expressly providing that it should not be ratified by the malapportioned legislature. Speaking through Chief Judge Ritter we said:

Nothing we do today is to be interpreted as authorizing the Legislature at any session prior to January 1967 to pass any further reapportionment legislation except to stagger the terms of the senators in accordance with the State Constitution of Utah. And particularly, nothing we do today is to be interpreted as authorizing legislative action with respect to any amendment which may be proposed to the Constitution of the United States to permit apportionment including factors other than population.

243 F.Supp. at 373.

Again we stated:

The Governor may or may not call a special session, and may or may not place apportionment upon its agenda. Having regard to the long period of time during which all efforts to obtain a constitutionally apportioned Legislature have been frustrated in this State, and to the further unfortunate delay until January 1967 before we shall have a constitutionally apportioned Legislature, well-known general principles of equity require that the Legislature not consider or vote upon any proposal to amend the Constitution of the United States on the subject of legislative reapportionment, and require that the Legislature not take any action on the subject of legislative apportionment except to stagger the terms of senators to provide continuity.

243 F.Supp. at 374.

In a footnote, specific notice is taken of the resolution in question, it being said:

It is interesting to note the speed by which the last State Legislature memorialized Congress (S.J.R. #5) to call a constitutional convention to provide for reapportionment "on factors other than population", which resolution the State Senate passed on the tenth day of the session, compared to the Legislature's hesitancy to properly reapportion under the mandate of this court, which action occurred on the final (sixtieth) day of the session.

243 F.Supp. at 373 n.10.

In other respects, language in the opinion in my judgment was overly broad. This led me to file a separate opinion concurring in the result and dissenting in part. I objected to some of the precatory language in the majority opinion and added:

* * * In the practicalities of judgment it is the court's duty to come to a conclusion on the facts before it as to the constitutionality of a given act or course of action within the realities of the situation—and we have. That the case may be close to the line and contain the seeds for our future intervention should legislators not strengthen the Act in view of developing conditions does not relieve us of the responsibilities of judgment, and having reached that judgment, we are not invested perpetually with the powers of supervision. This case sometime must come to an end and we should not, against the background of such expressions, give even the appearance of arrogating to the court the function of perpetual watchdog of the state legislature. If and when the legislature passes, or threatens to pass, further acts in conflict with the Constitution of the United States or

to frustrate our dispositions as to prior acts, or there is brought to our attention by appropriate pleadings further invidious discriminations in voting power which is repugnant to the Constitution, time enough to pass upon these other situations.

\* \* \* Federal-state relations at best are too delicate, important and fraught with opportunity for too many conflicts to thus permit our being carried, even with the best of purposes, beyond matters which have been properly presented to us and which are essential to enforce the Equal Protection Clause of the Constitution of the United States. This would only serve unnecessarily to cast an indefinitely lengthening shadow over matters of peculiar state concern discordantly with the Tenth Amendment. 243 F.Supp. at 380, 381 (footnotes omitted).

There were other obvious reasons for the dissolution of the three-judge court in which Judge Lewis and I shared, but for myself I wish to add that my prior uneasiness at the idea of perpetually supervising the State Legislature concerning future activities without reference to anything before the court was multiplied by the present suggestion that the old resolution of which we took notice at the time should after these years be relitigated in this action, despite our previous determination that with respect to the resolution and any related problem, it was sufficient to provide expressly that our judgment must not be interpreted as authorizing legislative action with respect to any amendment which may be proposed to the Constitution of the United States to permit apportionment including factors other than population.

When any amendment is proposed for ratification, of course, the question may arise as to whether the Legislature attempting to ratify is malapportioned. But this will be a separate case in my judgment despite the broad language used in the former opinion. There is nothing to prevent the constitution of

a new three-judge court concerning future problems, even though what we have said concerning related problems may be persuasive or even res judicata. Such future problems will be assigned by automatic assignment to one of the two judges of this court in accordance with the order of the Circuit Council with reference to the division of business among the judges of this district. A three-judge court or an assignment to one judge of a case which has become fully adjudicated cannot relegate to that judge or that court the consideration of all other matters relating to the same general subject *in perpetuum*.