414 P.2d 575

**Louise B. TAYLOR, Individually and as Guardian Ad Litem of James Taylor, Mary Louise Taylor and Susan Taylor, Plaintiffs and Respondents,**

**v.**

**Virginia Clare JOHNSON, Defendant and Appellant.**

**No. 10316.**

Supreme Court of Utah.

May 17, 1966.

Ernest F. Baldwin, Jr., Salt Lake City, Ford R. Paulson, Provo, for appellant.

Aldrich, Bullock & Nelson, Clair M. Aldrich, Provo, for respondents.

McDONOUGH, Justice.

The plaintiff, Mrs. Louise B. Taylor, for herself and minor children, sued to recover for the death of her husband which was caused by the defendant driving her car into a trailer he was assisting in removing from the highway. The case was first tried in Juab County, where a jury returned a verdict of no cause of action. On appeal the case was remanded for a new trial.[1] Defendant made a motion for change of venue, which was granted, and the case was tried in Utah County. It resulted in a jury verdict and judgment for the plaintiff in the amount of $28,000.

Defendant appeals charging errors in: 1) instructions to the jury; and 2) the admission of certain evidence.

The facts are set forth in the prior opinion, to which we refer, but we also briefly recap them here. The accident occurred at about 9:30 p. m., June 13, 1961, about nine miles south of Levan, Utah. Don Milner, driving north on said highway, pulling a homemade two-wheel, single-axle trailer, struck a deer, damaging the right rear wheel housing, thus immobilizing his automobile. After stopping, Milner flagged down a car approaching from the south driven by Everett Kester, an acquaintance. They stopped another car and asked the driver to send a wrecker from Levan.

When Mr. Taylor arrived with the wrecker, they disengaged the trailer from the rear of the Milner car, pulled it off to the east side of the highway to fasten it to the Kester car, as the latter had agreed to tow it to town. Mr. Taylor then placed his wrecker at the rear end (south) of the Milner car, with the wrecker facing south. He then left the wrecker, with its headlights on and its blue turret light flashing, to assist in fastening the trailer to the Kester car. As this was done defendant Johnson approached from the south at a high rate of speed. She states that when she was about half a mile away she saw the headlights and the revolving blue turret light of the wrecker, but assumed it was traveling toward her on its own side of the highway. She says she took her foot off the gas pedal, reducing her speed from about 60 to about 50 miles per hour. It was not until she was quite close to the wrecker that she observed it to be stopped and partially over the center line in her lane of traffic, so she veered to the right to avoid the wreck-

---

1. Taylor v. Johnson, 15 Utah 2d 342, 393 P.2d 382 (1964).

er and applied her brakes, but struck the rear of the trailer, knocking it into the Kester car, crushing Mr. Taylor between the two.

The principal problem here confronted is the contention of the defendant that the trial judge in Instruction No. 9 took from the jury the question whether the deceased was guilty of contributory negligence:

> You are instructed that a wrecker operator in darkness has the duty to reasonably warn approaching traffic of the obstruction on the roadway by displaying lights, flares, or other practical means, and failure to do so, may be negligence.

> You are further instructed, however, that if the defendant in this case saw the wrecker and knew it to be a wrecker, in sufficient time to have reasonably avoided the collision, any negligence of James Warner Taylor, if you so find, in failing to display lights, flares or other physical warning devices, would not be a contributing proximate cause of his death, and the defense of contributory negligence would not defeat plaintiff's recovery.

 Careful attention to this instruction in its entirety shows that it is talking about the subject of the presence of the wrecker on the highway. The first sentence plainly so states and indicates the duty of "properly displaying lights, flares, or other practical means * * *" to warn of the wrecker's presence, and that the failure to do so may be negligence. Inasmuch as it is undisputed that the wrecker had both its headlights and the blue turret light on; and that the defendant in fact saw it half a mile away, no amount of flares or other additional warning devices would have served any useful purpose in warning of its presence.[2] The trial judge was thus correct in instructing the jury *with respect to the wrecker* that, "any negligence of Mr. Taylor, the deceased, * * * in failing to display lights, flares or other practical devices would not be a contributing proximate cause of his death." We cannot see that the instruction just discussed withdraws from the jury the question of the contributory negligence of the deceased as defendant contends. On the contrary, in Instruction No. 15 the court accurately dealt with this subject, in which he told the jury that the law does not permit the heirs of one who is negligent to recover against another, even though negligent, where the negligence of each proximately contributed to cause the injury. Specifically, it stated that if they found the deceased James Taylor was negligent and that his negligence proximately contributed to cause the collision, even though the defendant was negligent, the plaintiffs could not recover. In Instruc-

2. Velasquez v. Greyhound Lines Inc., 12 Utah 2d 379, 366 P.2d 989 (1961).

**20**

tion No. 5 the court properly defined contributory negligence; and in No. 8 explained that it was an affirmative defense the burden of proof of which was on the defendant. As we have reiterated innumerable times one instruction should not be considered in isolation in order to predicate a claim of error upon it, but the instructions must be read and understood as a connected whole.[3]

A further attack is made upon the propriety of giving Instruction No. 10 in which the court told the jury that, "Based on the commonly known fact that the instinct of self-preservation is such that persons use ordinary and reasonable care for their own safety, the law permits you to assume that the deceased, at the time of and immediately preceding the incident in question was exercising due care for his own safety. And you may make findings in accordance therewith, unless you are persuaded from a preponderance of the evidence that he was guilty of contributory negligence elsewhere in these instructions defined." Regardless of any niceties of argument that may be made with respect to this presumption, the effect of this instruction was to advise the jury accurately that the defendant had the burden of proving any contributory negligence of the deceased by a preponderance of the evidence.[4]

The questions raised concerning the admission of evidence pertain to testimony of the investigating officers that the speed of defendant's automobile was at least 71 miles per hour just preceding the collision, calculated from the skid marks and the coefficient of friction on the highway. It is appreciated that the physics and dynamics of determining the speed of automobiles from brake marks, especially where there is a wreck which absorbs part of the momentum, can be very complicated. It must be conceded that evidence which amounts to mere guesswork should not be admitted. The officers were shown to have many years of experience in this work. They used precalculated charts, the accuracy of which was not questioned. Whether the officer has sufficient background of learning and of experience; and also whether he takes into account the factors necessary to make an estimate of speed of sufficient accuracy that the trial court believes that it will be of assistance to the jury is primarily for the trial court to determine.[5] If in his judgment the evidence will be of such assistance, frailties

3. Martin v. Sheffield, 112 Utah 478, 189 P.2d 127 (1948).
4. See Jury Instruction Forms Utah, 16.8; see also Mecham v. Allen, 1 Utah 2d 79, 262 P.2d 285.
5. Testimony of a similar character, allowing experienced police officers to testify

as to speed by the use of a precomputed chart, has been allowed. See Peterson v. Nielsen, 9 Utah 2d 302, 343 P.2d 731 (1959); Gittens v. Lundberg, 3 Utah 2d 392, 284 P.2d 1115 (1955); Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986 (1954); as to trial judges' prerogative

therein which may be evident from his testimony or from cross-examination go to the weight of his testimony, rather than to its admissibility. The determination made by the trial court should be given some credit and should not be overturned unless it is made clearly to appear that he was in error in his judgment and that it resulted in substantial prejudice.

Affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and CROCKETT, WADE, and CALLISTER, JJ., concur.

· in determining qualifications· of expert, see Webb v. Olin Mathieson Chemical Corp., 9 Utah 2d 275, 342 P.2d 1094, 80 A.L.R.2d 476 (1959).