STATE of Utah, Plaintiff and
Respondent,

v.

Don C. COFFEY, Defendant
and Appellant.

No. 14710.

Supreme Court of Utah.

May 16, 1977.

Gordon A. Madsen and Maxwell A. Miller, Madsen & Cummings, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, David J. Schwendiman, Asst. Attys. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

ELLETT, Chief Justice:

Appellant bought a load of cherries and paid for them with a check in the amount of $3,560 drawn on the Dixie State Bank. Both the seller and his son testified that appellant represented the check to be good at the time it was written and delivered and no contrary evidence was presented to the trial court. The check was not post-dated. The seller presented the check for payment through his collection bank, but it was dishonored by appellant's bank. The seller's bank held the check for approximately a month but was unable to collect it.

Appellant was subsequently tried for issuing a bad check before a jury and a verdict of guilty was returned under Section 76–6–505, U.C.A.1953 (1975 Pocket Supp.). The pertinent part of this section reads:

> (1) Any person who issues or passes a check for the payment of money, for the purpose of obtaining from any person, firm, partnership, or corporation, any . . . property, or other thing of value . . . , *knowing* it will not be paid by the drawee and payment is refused by the drawee, is guilty of issuing a bad check. [Emphasis added.]

Our statute defines "knowing" in Section 76–2–103(2), U.C.A.1953 (1975 Pocket Supp.):

> . . . A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

This appeal is taken on the supposition that the State failed to meet its burden of proving "knowledge" and that the court incorrectly instructed the jury on the elements of the crime.

With respect to the first point, it is the responsibility of the jury to determine whether the elements of the crime

have been proved beyond a reasonable doubt. This court on appeal examines the evidence in the light most favorable to the verdict; and if it appears that the jury acted fairly and reasonably, the judgment will not be disturbed.[1]

◼ Reasonable minds could fairly believe from the evidence in this case that appellant, at the time he wrote the check, knew it would be dishonored when presented for payment. There was no evidence offered by appellant that he or his bank had made some kind of computation error; or that he had any arrangement for an extension of credit on his checking account which he intended to use; or that deposits had been made to his account to cover the check. In fact, the evidence shows that for almost a month after the check had been presented for payment there were still insufficient funds to cover it.

Before appellant obtained the cherries he repeatedly assured the seller that his "check was good." We can reach no other conclusion than to agree with the finding of the jury that at the time the defendant wrote the check, he knew it would not clear the bank.

◼ Appellant also contends that the trial court erred in not fully and correctly instructing the jury as to the elements of the crime. In one of the jury instructions, outlining the elements of the crime, the trial court substituted the word "intent" for "knowing." Instructions are to be considered as a whole and reconciled whenever possible.[2]

In view of all the instructions given, we find that when the jury was asked to determine whether appellant "had an intent to defraud" the seller, it was equivalent to knowing that the check would not pass. Therefore, under the facts of this case,

proof of intent to defraud is also proof that appellant knew his check would not be paid.[3] Consequently we find that it was not prejudicial error for the court to instruct the jury as it did.

◼ The appellant's lawyer who tried this case filed the brief on appeal, but before argument, a new set of attorneys were engaged to pursue the appeal. The argument is now made that the case should be reversed because the trial counsel was incompetent in that he did not call the appellant to testify at trial.

This is no proof of incompetency on the part of counsel. We do not know how many prior convictions for bad checks the appellant may have had, nor do we know whether there might have been a conniving at perjury or subornation thereof by allowing the appellant to testify. It might just be that if appellant had testified and told the truth, his conviction would have been certain.

There is no merit to the claim of incompetent counsel. Could it be a case of "the pot calling the kettle black"?

The judgment is affirmed.

HALL, J., concurs.

WILKINS, J., concurs in result.

MAUGHAN, J., concurs in the result of the main opinion and also with Justice CROCKETT'S concurring opinion.

CROCKETT, Justice (concurring, with comment):

I concur, but add the comment that I trust that no aspersion is intended upon either trial or appellate counsel. It seems to me they each competently discharged their duties. But appellate counsel was placed in an awkward position because of

---

1. *State v. Ward,* 10 Utah 2d 34, 347 P.2d 865 (1959).

2. *Taylor v. Johnson,* 18 Utah 2d 16, 20, 414 P.2d 575 (1966); *Brunson v. Strong,* 17 Utah 2d 364, 367, 412 P.2d 451 (1966).

3. We believe that the statutory definition of knowing implies intent when one is aware that his conduct is reasonably certain to lead to the end result.

some distortions in criminal procedure in recent years. See e. g. *Duran v. Turner,* 30 Utah 2d 249, 516 P.2d 353 (1973) and comment therein in regard to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which later case indicates that an appeal should be taken, however meritless or useless it may be, which impresses me as a fatuous dictum, which serves no useful purpose to society and does no credit to the administration of justice.