The STATE of Utah, Plaintiff
and Respondent,

v.

Larry Vale POTTER, Defendant
and Appellant.

No. 16355.

Supreme Court of Utah.

March 13, 1981.

Phil L. Hansen, Salt Lake City, for defendant-appellant.

Robert B. Hansen, Earl F. Dorius, Salt Lake City, for plaintiff-respondent.

MAUGHAN, Chief Justice:

The defendant appeals his conviction for aggravated robbery and failure to stop a vehicle at the command of a police officer and the District Court's revocation of his parole. We reverse the conviction and remand the matter to the District Court for a new trial. All statutory references are to Utah Code Annotated, 1953, as amended.

At 1:30 a. m. on February 22, 1978, Von Wayne Johnston and his wife responded to a knock at the front door of their home in Wellington, Utah. Upon opening the door the couple was confronted by the defendant, Larry Vale Potter, hereinafter "Potter," who was holding a hand gun at his side pointed at the floor. When asked what he wanted, the defendant requested entry to the house which the Johnstons granted. After entering the house, Potter ordered the couple to bring him a roll of toilet paper and some matches. The couple complied with the request and placed the items in a "trooper" hat the defendant was holding. Upon receipt of these items the defendant told Mrs. Johnston she was no longer needed and could go into an adjoining room. The defendant and Mr. Johnston then stepped outside onto the front porch.

Once outside, the defendant fumbled with his hat which contained the toilet paper and matches. After dropping those items, the defendant stooped down and placed them back into the hat. When the items were again secure, Potter shook Mr. Johnston's hand and thanked him before retreating to his automobile and hurriedly leaving the scene.

The Johnstons testified that although Potter barked his request out as orders, and seemed nervous, he was very polite and never threatened them or raised his weapon. They also testified that throughout the encounter, Potter appeared to be incoherent, as if in a daze. They explained the defendant had a blank stare and appeared to them to be under the influence of narcotics.

When Potter left the residence, Mrs. Johnston phoned the Utah Highway Patrol and reported the incident. After locating the defendant and signaling to him, an officer of the highway patrol stopped his vehicle some distance from where Potter had pulled off the highway. As the patrolman was leaving his automobile to approach the defendant, an officer of the Price Police Department drove past him and towards the defendant's vehicle.

Upon the abrupt arrival of this second vehicle, the defendant sped away from the scene. A high speed chase ensued during which the defendant repeatedly slowed down and stopped only to speed away again. Potter also signaled to the police several times to come up along side of him, only to prevent this by steering his automobile into the opposite lane of traffic and successfully blocking off that lane.

Finally, a mile from a police roadblock, Potter stopped his automobile and exited it holding the revolver at his side. The police ordered the defendant to drop the gun, which he did. They then approached him and took him into custody.

While the officers testified the defendant did not exhibit the characteristics of a person intoxicated and seemed to have complete physical control of his automobile, a blood test taken more than an hour after the arrest revealed a blood alcohol content of .24 percent.

Potter was charged by complaint and information with the crimes of aggravated robbery in violation of 76–6–302, failure to stop a vehicle at the command of a police officer, in violation of 41–6–169.10, and aggravated assault, in violation of 76–5–103.

At his trial the defendant relied primarily on the defense of reduced capacity which he averred resulted from the combined effects of alcohol and a prior injury to his brain. In support of this contention the defendant testified he had no recollection of his activities from the time he was drinking at the Elk's Club until he awoke in jail.

The defendant also introduced the testimony of Dr. Lincoln Clark as an expert psychiatric witness. Dr. Clark testified the defendant's behavior could be explained as the occurrence of a form of epilepsy induced by alcohol and alcohol withdrawal. He testified this conclusion was supported by the results of an electroencephalogram which he administered to the defendant.

Dr. Clark also stated the evidence presented at trial, i. e., the defendant's actions on the morning in question, his loss of memory concerning that period of time, his high blood alcohol level and his physical control and mobility, supported the conclusion that the defendant underwent a psychomotive seizure which rendered him in a dreamlike state. This he explained could have been brought about by the combined effects of alcohol and the defendant's preexisting injury.

After the presentation of all of the evidence, the jury returned a verdict of guilty to the charges of aggravated robbery and failure to stop at the command of a police officer, and acquitted the defendant of the charge of aggravated assault. The district court sentenced Potter to an indefinite term in the Utah State Prison of from five years to life and fined him $2,000. The court suspended the prison sentence and $1500 of the fine and placed the defendant on probation for a period of five years. However, prior to this appeal the defendant's probation was revoked.

Although the defendant challenges the propriety of the revocation of this probation, our disposition of the case on other grounds renders those issues immaterial and alleviates the necessity of describing the circumstances surrounding that revocation.

After presenting the substantial evidence detailed above in support of his defense of reduced capacity due to voluntary intoxication, the defendant submitted several jury instructions to the court concerning the effect of voluntary intoxication on the charges against him. The trial court refused to give these instructions and instead instructed the jury in general terms on the intent requirements incident to the crimes charged and the effect of intoxication on the defendant's criminal culpability.

■ The trial court has a duty to instruct the jury on the law applicable to the facts of the case. Encompassed in this duty is the right of the defendant to have his theory of the case presented to the jury in a clear and understandable way.[1] Because the instructions given in the present case were so general that they could have misled and confused the jury, they failed to fulfill this duty and thus denied the defendant a fair trial on the critical issues of the case.

■ Due to the character of the various criminal charges brought against the defendant, the trial court was required to instruct the jury on the law of criminal intent for both general and specific intent crimes. When a court is called upon to tender these conflicting instructions, it must take specific care that the instructions remain distinct and cannot be confused or misapplied. Because the instructions given in the present case failed to explain adequately the distinction between the general and specific intent requirements or relate those requirements to the facts of the case and the different crimes charged, they were misleading and confusing.

■ In Instruction No. 6 the court stated:

"It does not require specific intent to violate the law but merely an intent to engage in acts or conduct that constitute the elements of the crime."

The unfortunate use of the term "specific intent" in this instruction, which outlines the general intent requirement, provided a grave possibility of jury confusion in applying the facts of the case to the specific intent requirements of aggravated robbery and failure to stop. This possibility of confusion was increased by the next line of Instruction No. 6 which stated:

"Therefore, if you find that the mental condition of the defendant at the time of the alleged offense was such that he did not have the intent as that term has been defined for you in these instructions *to perform the acts or conduct* required for the commission of the offense charged, or if you entertain a reasonable doubt thereof, then you should find the defendant not guilty of *the crimes charged*." [Emphasis added]

■ Thus, while this instruction should have been applied specifically to the crime of aggravated assault, the vague reference to "crimes charged" may well have led the jury to believe they should automatically infer the specific intent required for the other two offenses from the voluntary doing of the act. Such an instruction which may lead the jury into believing that specific intent is automatically to be inferred from the intentional doing of the prescribed acts constitutes error.[2]

■ This error was not cured by Instruction No. 7, which merely stated in the abstract the definition of specific intent. As we explained earlier, when the trial court is required to give two conflicting instructions, it must be especially careful to explain clearly the criminal intent required for the commission of the separate offenses. To facilitate clarity it should relate these requirements to the specific facts of the case. By doing this the court can effective-

1. See *State v. Stenback*, 78 Utah 350, 2 P.2d 1050 (1931).

2. *People v. Hill*, 67 Cal.2d 105, 60 Cal.Rptr. 234, 429 P.2d 586, 595 (1967).

ly guard against the jury being misled or confusing the general and specific intent requirements.

■ In contrast, a single, abstract definition of specific intent as employed in the present case does not facilitate a clear understanding nor an appropriate application of the law to the crimes charged. Although the instruction may correctly state the law, such an abstract and lexical definition does not discharge the duty of the court.[3]

Thus, the failure of the court to explain the intent requirements in relation to the specific facts and charges of this case supplements rather than alleviates the confusion inherent in giving conflicting general intent and specific intent instructions and constitutes error.

■ Also, the court's instruction concerning the legal effect of involuntary intoxication constitutes error. In Instruction No. 8, which is the only instruction dealing with the effect of intoxication on the defendant's culpability, the trial court quoted extensively from former Section 76–1–22.[4] This former section, however, has been replaced by 76–2–306 which provides:

"Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense; . . ."

■ Under this provision, when intoxication, whether voluntary or involuntarily produced, negates the existence of the state of mind required for the commission of the crime, the act or omission which otherwise would constitute an offense is purged of its criminality.[5] When this occurs, i. e., intoxication renders the accused incapable of forming the required specific intent, voluntary intoxication becomes a defense to the commission of the particular crime.[6] Therefore, the trial court's contrary statement in Instruction No. 8 misstated the applicable legal rule.[7]

■ Similarly, the court's statement that ". . . when a person in a state of intoxication, voluntarily produced in himself, commits a crime, the law does not permit him to use his own vice as a shelter against the normal legal consequences of his conduct," seriously misstated the law relative to crimes requiring specific intent. While this latter statement may be appropriate in reference to a crime requiring only general intent, its inclusion within the only instruction concerning the effect of intoxication in this case, without being explicitly confined to the crime of aggravated assault, is confusing and could have misled the jury.

---

3. *State v. Dewey*, 41 Utah 538, 127 P. 275 (1912); see also *Jensen v. Utah Railroad Co.*, 72 Utah 366, 270 P. 349 (1927). In *Jensen* we explained: "As a general rule a trial court should not leave the jury to apply mere general principles of law to a case, . . . . The rule is well settled that instructing a jury as a mere abstract or general statement as to the law should be avoided, . . . ." Id. 270 P. at 357. This rule assumes critical importance when the jury is faced with several criminal charges requiring both general and specific intent instructions. In such a case, the opportunity for confusion implicit in the separate instructions is greatly accentuated by abstract statements of the law which are not related to the pertinent facts.

4. This provision of the former code is identical to that found in Compiled Laws 1917, Title 119, Chapter 1, Sec. 7910, and states: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

5. See *People v. Hughes*, 11 Utah 100, 39 P. 492 (1895); *State v. Stenback*, supra note 1, 2 P.2d at 1054.

6. See *Williams v. State*, Ind., 402 N.E.2d 954 (1980).

7. "Instruction No. 8: Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.' This means that such a condition, if shown by the evidence to have existed in the defendant at the time when he allegedly committed the crime charged, is not of itself a defense. . . ."

■ Here again, when the court must instruct the jury, on both general and specific intent crimes it must adequately explain the distinction between the effect of voluntary intoxication on each. The court's failure to differentiate between these types of crimes in the present case rendered the instruction given confusing and presents the real possibility the jury was misled in its deliberation.

The failure of the court to relate the legal effect of intoxication to the facts of the case served to accentuate the misleading quality of the instruction given. Instruction No. 8 merely charged the jury:

"... in determining whether or not such motive, purpose or intent existed in the mind of the accused, [the jury] must take into consideration the evidence offered to prove that the accused was intoxicated at the time when the crime allegedly was committed. This fact requires an inquiry into the state of mind under which the defendant committed the act charged, if he did commit it. In pursuing that inquiry, it is proper to consider whether he was intoxicated at the time of the alleged offense. The weight to be given the evidence on that question and the significance to attach to it, in relation to all the other evidence, are exclusively within your province."

This instruction, which alone addressed the central issue of the trial, did not relate the applicable law to any facts the jury might find concerning the mental condition of the accused in relation to the crimes charged. The language of the instruction is so general it would be of little if any aid to the jury in the deliberations.[8]

Thus, the court's instruction was misleading and confusing and did not present the substance of the voluntary intoxication instructions requested by the defendant. The instruction given could have left the jury in a state of confusion or even with the impression that as a matter of law the defendant's voluntary intoxication could have no effect on the criminality of his conduct.[9]

We believe a substantial likelihood exists that the instructions given in the present case, when considered together,[10] confused and misled the jury in its deliberation on the principal issues of the case to the detriment of the defendant. The instructions failed to present to the jury in a clear and understandable manner the substance of the defense advocated by the defendant. The instructions thus constitute error which was prejudicial to the defendant and deprived him of a fair trial.[11] Therefore, the case is remanded to the District Court for a new trial.

WILKINS,* J., concurs.

STEWART, Justice: (concurring in result).

I concur in the result reached in the Chief Justice's opinion but do so for a different reason, i. e., the instructions are prejudicially flawed because the jury was never told specifically the elements of the crime of aggravated robbery. The instructions were worded in the statutory language, but in this case that was not sufficient. The instructions do not require the jury to find that the taking which occurs in a robbery must be with an intent to deprive.

Section 76-6-301, Utah Code Ann. (1953), as amended, was enacted in 1973 as part of the general revision of the criminal code. The phrase "felonious taking," as found in the prior statute, was changed to an "unlawful and intentional taking." This revision did not change that element of the crime requiring an intent to deprive which

8. See *State v. Stenback*, supra note 1, 2 P.2d at 1054; *see also People v. Valentine*, 54 A.D.2d 568, 387 N.Y.S.2d 25 (1976).

9. See *People v. Spencer*, 60 Cal.2d 64, 31 Cal. Rptr. 782, 383 P.2d 134 (1963).

10. See *State v. Coleman*, 17 Utah 2d 166, 406 P.2d 308 (1965).

11. See *State v. Day*, 90 N.M. 154, 560 P.2d 945 (1977); *People v. Cesare*, 68 A.D.2d 938, 414 N.Y.S.2d 585 (1979); *People v. Maliskey*, 77 Mich.App. 444, 258 N.W.2d 512 (1977).

* Wilkins, Justice, concurred in this case before his resignation.

has always accompanied the crime of robbery. See *People v. Hughes*, 11 Utah 100, 39 P. 492 (1895). Although the instructions use the term "specific intent," they did not define that term. However meaningful that term of art may be to lawyers, it clearly fails to convey the intended legal meaning to jurors unless it is carefully and precisely defined. Absent such a definition, the jury could not possibly find all the necessary elements of the crime, especially in view of the defense relied upon in this case.

In my view it is manifest error not to instruct a jury precisely as to the *mens rea* necessary for a conviction of robbery.

HALL, Justice: (dissenting).

Jury instructions are to be considered and construed as a whole and reconciled whenever possible;[1] conversely, they are not to be considered in isolation in order to predicate a claim of error.[2] In the instant case, the court specifically instructed the jury (Instruction No. 22) to consider and construe the instructions as one connected whole. It is presumed that the jury read and followed all of the court's instructions.[3]

In determining the sufficiency of instructions, each must be considered in conjunction will all of the others, and when taken as a whole they fairly tender the case to the jury, the fact that one or more instructions, standing alone, are not as full or as accurate as they might have been, it is not reversible error.[4]

When viewed in the light of the foregoing principles, the instructions given in this case adequately advised the jury as to the applicable law and thereby furnished a sufficient framework from which the defendant could argue his theory of intoxication and its effect upon his requisite criminal intent.[5]

Defendant focuses his challenge upon three of the court's instructions, they being Nos. 6, 7 and 8. However, those instructions are to be viewed in light of all of the others, and particularly Nos. 3, 4 and 5 which appropriately define the respective offenses charged and set forth the essential elements of each.

Instruction No. 3 defines the offense of aggravated robbery:

> ... the *unlawful and intentional* taking of personal property from the possession of another ... [Emphasis added.]

and lists the essential elements thereof as:

1. That the defendant on or about February 22, 1978 unlawfully and intentionally took personal property from the possession of Von W. Johnston.

2. That said taking from Mr. Johnston was from his person or immediate presence.

3. That the act of taking was accomplished by means of force or fear.

4. That in the course of the taking that the defendant used a firearm.

Instruction No. 4 defines the offense of failure to stop a vehicle at the command of a police officer as:

> ... being any driver who, having received a visual or audible signal from a police officer to bring his vechile [sic] to a stop, operates his vehicle *in willful or wanton disregard* of such signal so as to interfere with or endanger the operation of the police vehicle or any other vehicle or who increases his speed and attempts to flee or elude the police is guilty of said crime.... [Emphasis added.]

and lists the essential elements thereof as:

1. That the defendant, while driving an automobile, received a visual or audi-

1. *State v. Coffey*, Utah, 564 P.2d 777 (1977); *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968); *State v. Burch*, 17 Utah 2d 418, 413 P.2d 805 (1966).

2. *Taylor v. Johnson*, 18 Utah 2d 16, 414 P.2d 575 (1966); *City of Tacoma v. Harris*, 73 Wash.2d 123, 436 P.2d 770 (1968); *Hoskins v. State*, Wyo., 552 P.2d 342 (1976).

3. *State v. Jamerson*, 74 Wash.2d 146, 443 P.2d 654 (1968); *Kennedy v. State*, Wyo., 559 P.2d 1014 (1977).

4. *State v. Reiner*, Mont., 587 P.2d 950 (1978).

5. The record is silent in this regard, but it is assumed that defendant fully argued his theory to the jury.

ble signal from a police officer to bring his vehicle to a stop.

2. That the defendant continued to operate his vehicle *in willful or wanton disregard* of such signal.

3. That at the time the defendant interfered with or endangered the operation of the police vehicle or any other vehicle or increased his speed and attempted to flee or elude the police. [Emphasis added.]

Instruction No. 5 defines the offense of aggravated assault as:

... an attempt with unlawful force or violence to do bodily injury to another and when the actor, during the course of the attempt, uses a deadly weapon or such means or force likely to produce death or serious bodily injury....

and lists the essential elements thereof as:

1. That the defendant on or about the 22nd of February, 1978, attempted, with unlawful force or violence, to do bodily injury to Norman Vuksinick.

2. That during said attempt he used a deadly weapon or such means or force likely to produce death of serious injury to the said Norman Vuksinick.

Included in each of the foregoing instructions was the further admonition:

... If, however, the State has failed to prove to your satisfaction beyond a reasonable doubt [the elements of the offenses charged] ... or if you entertain a reasonable doubt, then it is your duty to acquit the defendant....

Instruction No. 6 advised the jury:

No person is guilty of an offense unless his conduct is prohibited by law and he acts *intentionally or knowingly with respect to each element of the offense as defined for you by these instructions.* It does not require a specific intent to violate the law but merely an intent to engage in the acts or conduct that constitute the elements of the offense.

Therefore, if you find that the mental condition of the defendant at the times of the alleged offenses was such that he did not have the intent as that term has been defined for you in these instructions to perform the acts or conduct required for the commission of the offense charged, or if you entertain a reasonable doubt thereof, then you should find the defendant not guilty of the crimes charged. [Emphasis added.]

Instruction No. 7 defines "intentionally" and reads as follows:

You are instructed that a person engages in conduct intentionally with respect to the nature of his conduct or to a result of his conduct *when it is his conscious objective or desire* to engage in the conduct or cause the result. [Emphasis added.]

Although the term "willful" was not defined in the instructions, it is a word commonly understood as being done of one's free will.[6]

When read together, and in context, the foregoing Instructions 6 and 7 properly state the law of specific intent crimes as set forth in the Criminal Code[7] wherein "intentionally" is defined as:

A person engages in conduct intentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.[8]

Instruction No. 8 reads as follows:

Our law provides that "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." This means that such a condition, if shown by the evidence to have existed in the defendant at the time when allegedly he committed the crime charged, *is not of itself a defense.* It may throw light on the occurrence and aid you in determining what took place; but when a person

---

6. Webster's Third New International Dictionary, Unabridged (1961).

7. U.C.A., 1953, 76–1–101, et seq.

8. U.C.A., 1953, 76–2–103(1).

in a state of intoxication, voluntarily produced in himself, commits a crime, the law does not permit him to use his own vice as a shelter against the normal, legal consequences of his conduct.

However, *when the existence of any particular motive, purpose or intent is a necessary element* to constitute a particular kind or degree of crime the jury, *in determining whether or not such motive, purpose or intent existed in the mind of the accused, must take into consideration the evidence offered to prove that the accused was intoxicated* at the time when the crime allegedly was committed.

*This fact requires an inquiry into the state of mind under which the defendant committed the act charged,* if he did commit it. In pursuing that inquiry, it is proper to consider whether he was intoxicated at the time of the alleged offense. The weight to be given the evidence on that question and the significance to attach to it, in relation to all the other evidence, are exclusively within your province. [Emphasis added.]

The foregoing instruction correctly states the law applicable to general and specific intent crimes, particularly so, when read in the context of Instructions 3, 4 and 5, *supra,* which explicitly explained the crimes charged in direct relation to the facts of this case. Had the jury determined that defendant's state of intoxication was such that it had rendered him incapable of comprehension, then they were clearly bound by the instructions given to acquit him. This, of course, they did not do, and their conviction is wholly supported by the believable evidence. While being chased by the police at speeds of up to 110 m. p. h., defendant would maneuver away and edge them into the borrow pit. He did not drive erratically, except for the high speed and other efforts to avoid capture, and there was no odor of alcohol about him or other evidence to justify a conclusion that his degree of intoxication (as subsequently determined by the blood-alcohol test performed) deprived him of the requisite motive, purpose or intent necessary to constitute the crime charged.

Defendant's remaining assertions of error (insufficiency of the evidence to convict and deprivation of constitutional rights in revoking his probation) have been duly considered and I deem them to be without merit.

I would affirm the conviction and judgment of the trial court.

CROCKETT, J., concurred in the dissenting opinion of HALL, J., before his retirement.