**STATE of Utah, Plaintiff and Respondent,**

v.

**Edward G. ROBICHAUX, Defendant and Appellant.**

**No. 16667.**

Supreme Court of Utah.

Dec. 30, 1981.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

---

**5.** *State v. Twitchell*, 8 Utah 2d 314, 333 P.2d 1075 (1959).

Jerome H. Mooney, Salt Lake City, for Robichaux.

HALL, Chief Justice:

Defendant appeals his conviction of theft, contending error in certain of the court's instructions to the jury.

The evidence at trial was that defendant, together with one Felger, and others, formed the entity known as North American Financial Corporation for the purpose of engaging in the business of buying and selling real estate. In order to fund their operations, defendant had, on previous occasions, placed certificates of deposit with lending institutions as a means of encouraging the making of loans. Felger testified that he delivered $11,700 of his own personal funds to defendant in the form of a cashier's check. Defendant was to use the funds as "spread money" in attracting loan funds. Specifically, the $11,700 was to be placed with Zions First National Bank for transfer to a New York City bank in return for a certificate of deposit. This was then to be placed with Deseret Federal Savings and Loan for the purpose of encouraging the approval of the needed loan. Felger was to get his money back when the loan was obtained. Instead of so proceeding, defendant opened a personal account, took $700 cash, and over the next two weeks expended substantially all of the money for his own purposes.

In his testimony, defendant acknowledged the receipt and use of the money, but offered the explanation that he did so only after advising Felger that the money was not needed as "spread money." He further testified that Felger had agreed that the money might be used for his own personal purposes. Thus, the issue presented to the jury for their determination was that of the intent of the defendant, i.e., whether he took unauthorized control of the money, and if so, whether he did so for the purpose of depriving Felger thereof.[1]

Both of defendant's contentions of error are directed against the court's instructions to the jury. His first point on appeal challenges the propriety of the court's instruction which states that "the law presumes that a person intends the reasonable and ordinary consequences of his own acts." He contends that such an instruction has the effect of reversing the burden of proof, placing it upon defendant, and thus constitutes a denial of due process.

It is beyond controversy that the burden is upon the prosecution to prove all elements of the crime beyond a reasonable doubt. The law is as stated in *State v. Curtis*:[2]

> ... it is ... to be kept in mind that the burden of proving the defendant's guilt beyond a reasonable doubt is always upon the state: both initially and ultimately. Therefore, the only requirement on the defense ... is that it be sufficient to raise a reasonable doubt.

This Court has long recognized the propriety of drawing reasonable inferences from proven facts. In the case of *State v. Peterson*,[3] the defendant was convicted of assault with a deadly weapon with intent to do bodily harm. The contention on appeal was that intent to do bodily harm was not sufficiently established by the fact that the defendant made a slashing motion toward his victim with a hunting knife, injuring the victim's hand. In affirming the conviction, this Court stated:

> ... It is true that the State was unable to prove directly what was in the defendant's mind relative to doing harm to the victim; and that he in fact denied having any such intent. However, his version does not establish the fact, nor does it even necessarily raise sufficient doubt to vitiate the conviction. If it were so, it would lie within the power of a defend-

---

1. U.C.A., 1953, 76–6–404 sets forth the elements of the offense of theft.

2. Utah, 542 P.2d 744 (1975); see also, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

3. 22 Utah 2d 377, 453 P.2d 696 (1969).

ant to defeat practically any conviction which depended upon his state of mind. As against what he says, it is the jury's privilege to weigh and consider all of the other facts and circumstances shown in evidence in determining what they will believe. This includes not only what was said and what was done, *but also the drawing of reasonable inferences from the conduct shown*, which in this instance they may well have regarded as speaking louder than the defendant's later defensive claims as to what his intentions were. [Emphasis added; citations omitted.]

In the instant case, defendant contends that the presumption instruction given by the court could have been interpreted by the jury as being mandatory or conclusive, and thus violative of the burden of proof standard. He relies upon the case of *Sandstrom v. Montana*[4] in support of his position.

The following reasoning of the *Sandstrom* court has direct application to this case:

Petitioner's jury was told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." They were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of "some" evidence; nor even that it could be rebutted at all. Given the common definition of "presume" as "to suppose to be true without proof," Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.

First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a

direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

\* \* \* \* \* \*

A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney v. Wilbur*, 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (1975). In *Mullaney*, the charge was murder, which under Maine law required proof not only of intent but of malice. The trial court charged the jury that " 'malice aforethought is an essential and indispensable element of the crime of murder.' " *Id.*, at 686 [95 S.Ct. at 1883]. However, it also instructed that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Ibid.* As we recounted just two Terms ago in *Patterson v. New York* [432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281], "[t]his Court . . . unanimously agreed with the Court of Appeals that Wilbur's due process rights had been invaded by the presumption casting upon him the burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation." 432 U.S., at

**4.** 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

214 [97 S.Ct. at 2329]. And *Patterson* reaffirmed that "a State must prove every ingredient of an offense beyond a reasonable doubt, and ... may not shift the burden of proof to the defendant" by means of such a presumption. *Id.*, at 215 [97 S.Ct. at 2329].

442 U.S. at 524, 99 S.Ct. at 2459.

The Court in *Sandstrom* thus concluded that the challenged instruction might have been interpreted by the jury only as directing a finding of intent absent rebutting evidence (which is exactly what the instruction in the instant case does), and held that the constitutional defect lay in the possible shifting of the "burden of persuasion on the element of intent"—precisely the defect in the instruction in the instant case.

■ The law has long recognized an inference, based on common experience, that people generally intend the natural consequences of their act. But common experience also teaches that that proposition is all too often not true. People frequently do not do what they intend and do what they do not intend. Given the high standard of proof in a criminal case, and the relative burdens on the prosecution and the defense, the jury should, at most, be told that it *may*, on the basis of all the evidence, including the inference that people usually intend the natural consequences of their acts, find that the defendant intended the natural consequences of his act. Had that been the case, the jury would have had to consciously make a finding as to whether the prosecution had proved the requisite intent. But under the instructions given, that intent was at least initially established as *a matter of law*, and the burden of persuasion, in the jury's mind, may well have been shifted to the defendant.

Defendant's remaining point on appeal is that the court erred in instructing the jury that he could be found guilty if he acted "intentionally" or "knowingly." The challenged portion of the instruction reads as follows:

In a case such as this, under the law no person is guilty of an offense unless his conduct is prohibited by law and he acts intentionally or knowingly. A person acts intentionally under the law, either with respect to the nature of his conduct or to the result of his conduct, when it is that person's conscious objective or desire to engage in the conduct or cause the result. A person acts knowingly when he is aware of the nature of his conduct or the existing circumstances or that his conduct is reasonably certain to cause the result.

Defendant contends that since conviction of theft requires a finding of specific intent, he cannot be convicted on an alternative finding that he acted "knowingly." Specifically, defendant contends that the portion of the instruction which defines "knowingly" might arguably include reckless conduct.

■ When viewed in context with all of the instructions given,[5] and in light of the specific facts and circumstances of this case, any error in giving the challenged portion of the instruction is deemed to be without prejudice and hence not reversible error. The law is as was stated in *State v. Urias* :[6]

... [W]e do not upset the verdict of a jury merely because some error or irregularity may have occurred, but will do so only if it is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result. [Citation omitted.]

The Court having included the statutory definition[7] of "purpose to deprive" as having "the *conscious* object to withhold property," in the *same* instruction with the challenged language renders it extremely unlikely, if not impossible, for the fact-finder to have based its determination of guilt

---

**5.** *State v. Coffey*, Utah, 564 P.2d 777 (1977); *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968); *State v. Burch*, 17 Utah 2d 418, 413 P.2d 805 (1966).

**6.** Utah, 609 P.2d 1326 (1980); see also, *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322 (1974).

**7.** U.C.A., 1953, 76–6–404.

upon any conduct other than intentional. Particularly is this so in light of the evidentiary facts of this case.

We reverse defendant's conviction and remand the case for a new trial.

STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.