**STATE of Utah, Plaintiff and Respondent,**

v.

**Frank S. RUBEN, Defendant and Appellant.**

**No. 17778.**

Supreme Court of Utah.

March 31, 1983.

Randall Gaither, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals his conviction on two counts of automobile homicide, a felony in the third degree.[1] He raises two contentions of error: 1) the trial court improperly instructed the jury on the relationship between the elements of criminal negligence and intoxication; and 2) the court's instructions to the jury on simple negligence were inappropriate.

On October 20, 1980, at approximately 8:30 p.m., an automobile accident occurred at the intersection of North Temple Street and Airport Road in Salt Lake City, resulting in the untimely deaths of two young men.

According to eyewitness accounts, defendant, in a Dodge pickup truck, was proceeding west along North Temple toward the Airport Road and North Temple intersection at an estimated speed of 45 to 60 miles per hour. Coming south on Airport Road, approaching the same intersection at approximately the same time, were three young men, Corey Cummings, Jeffrey Shaw and Tom Clark, in a Mercedes Benz traveling at an estimated speed of 30 miles per hour.

Jeffrey Shaw, the only survivor of the three young men in the Mercedes, testified that several seconds before their car reached the intersection, the semaphore had changed from red to green, and since their lane of traffic was clear they were able to proceed into the intersection without stopping or reducing their speed significantly.

Witnesses traveling westbound on North Temple, in the same group of vehicles as defendant, testified that as the group approached the intersection, the semaphore changed to amber and then to red. While all the other vehicles in the group slowed down and stopped, defendant proceeded without slowing down, entering the intersection several seconds after the light had turned red. The result was tragic. Defendant's pickup collided with the Mercedes, which had entered the intersection at precisely the same moment, pinning it against the guardrail. Corey Cummings, the driver of the Mercedes, and Tom Clark, a passenger in the back seat, were killed. Jeffrey Shaw, a third passenger in the Mercedes seated in the front on the passenger's side, was injured, but survived.

Notwithstanding the undisputed fact that defendant's pickup, after entering the intersection in the right-hand lane, veered sharply to the left, four eyewitnesses testified that defendant made no evasive maneuvers, such as applying the brakes or steering to avoid the Mercedes, prior to the collision. In addition, the prosecution offered expert testimony to the effect that the gouges and scuff marks examined at the scene of the accident were not the result of evasive maneuvering, and further that the pickup's lateral movement to the left was due to the shifting effect of the impact.

Evidence was also adduced to the effect that defendant was under the influence of alcohol at the time the accident occurred. Empty beer cans were found in the cab of defendant's pickup, and the odor of alcoholic beverages was detected both in the pickup and on defendant's person. Two blood samples were taken from defendant shortly after the accident. Comparative tests were run thereon, which revealed respective blood alcohol levels of .208 and .20 percent, by weight.

The defendant was tried by a jury and convicted of two counts of automobile homicide, from which he appeals.

---

1. In violation of U.C.A., 1953, § 76–5–207, as amended.

At the time the information was filed in this case, this Court had recently overruled the precedent established in *State v. Durrant,*[2] *State v. Anderson,*[3] and *State v. Wade*[4] regarding the degree of negligence required for a conviction under U.C.A., 1953, § 76–5–207 (automobile homicide). We held in *State v. Chavez:*[5]

> We are therefore of the opinion that our previous cases holding that automobile homicide requires only proof of simple negligence under Section 76–5–207 are in error, and are overruled. And we hold that a conviction of automobile homicide requires an instruction on criminal negligence as that term is defined in Section 76–2–103(4), and a determination thereof by the jury.[6]

*Chavez* at 1228.

Prior to the *Chavez* decision, the simple negligence standard could be satisfied by a mere showing that the defendant had driven a vehicle while intoxicated.[7] After *Chavez,* with the advent of the criminal negligence standard, the elements of intoxication and negligence could no longer be considered one and the same; rather, they became separate substantive elements.

Defendant contends that the trial court failed to adhere to the rule articulated in *Chavez* by instructing the jury on the relationship between intoxication and criminal negligence. Defendant refers specifically to instruction No. 17, which reads as follows:

> You are instructed that you may consider the degree of the defendant's intoxication or the amount of alcohol consumed by the defendant as factors in determining whether the defendant was criminally negligent while operating a motor vehicle.

Defendant maintains that this instruction effectively removed the distinction drawn in *Chavez* between criminal and simple negligence, and thus broadened the scope of potential criminal liability to such an extent as to allow the jury to convict defendant upon a mere showing that he had operated a motor vehicle while intoxicated.

In furtherance of this position, defendant directs the Court's attention to the trial court's reliance upon *State v. Capps*[8] as a basis for instruction No. 17. In *Capps,* this Court reasoned that a person who drives while intoxicated to such a degree that his locomotion and speech are impaired is criminally negligent.[9] Defendant points out that the *Capps* reasoning was cited as authority in *State v. Anderson, supra,* which was explicitly overruled by *Chavez.* Although defendant does not draw a direct conclusion from this evidence, his apparent purpose in presenting it is to show that even though *Capps* itself was not explicitly overruled by *Chavez,* the effect of overruling the *Anderson* decision was to invalidate the *Capps* reasoning. Were this supposition accurate, the trial court's reliance upon *Capps* as a basis for instruction No. 17 would render the instruction erroneous.

Defendant further submits that the trial court's alleged error in granting instruction No. 17 was compounded by its refusal to give requested defense instructions which purportedly set forth the difference between criminal negligence and intoxication.[10]

---

2. Utah, 561 P.2d 1056 (1977).

3. Utah, 561 P.2d 1061 (1977).

4. Utah, 572 P.2d 398 (1977).

5. Utah, 605 P.2d 1226 (1979).

6. In 1981, after the occurrence of the alleged offense and the commencement of this action, although prior to the trial, the Legislature amended U.C.A., 1953, § 76–5–207 to reinstate simple negligence as the requisite state of mind. U.C.A., 1953, § 76–5–207 (Supp.1981). Inasmuch as *Chavez* was the law in this state at the time this action was initiated, it was undisputedly recognized by the parties as controlling.

7. 561 P.2d at 1058. *See also supra* n. 3 & n. 4.

8. 111 Utah 189, 176 P.2d 873 (1947).

9. *Id.* 176 P.2d at 874.

10. Defendant requested the following instructions, which were refused by the trial court:

A finding of criminal negligence cannot be based upon a finding that the defendant is under the influence of an intoxicating liquor

This Court issued a clear set of guidelines in *State v. Chavez* for the application of the criminal negligence standard in automobile homicide cases. These guidelines consisted of an instruction to the jury on criminal negligence "as that term is defined in Section 76–2–103(4), and a determination thereof by the jury," *supra.* The § 76–2–103(4) definition of criminal negligence is as follows:

A person engages in conduct:

\* \* \* \* \* \*

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

The court's instructions No. 15 and No. 16 are as set forth below.[11] These instructions undisputedly comply with the aforementioned statutory and decisional requirements. Instruction No. 15 is nearly an exact reproduction of § 76–2–103(4), and No.

16 is simply an explanatory breakdown of the elements set forth in No. 15.

Contrary to defendant's conclusion, instruction No. 17, *supra,* did not vitiate the effect of instructions No. 15 and 16; rather, it served to complement them. Defendant's averment that instruction No. 17 broadened the scope of criminal liability, confused criminal and simple negligence and misled the jury as to the substantive elements of the crime, apparently rests upon the assumption that intoxication cannot be considered even as a factor in determining whether the defendant's acts were criminally negligent. This assumption does not find support in the *Chavez* decision nor in any other decision of this Court.

■■■ While it is no longer appropriate to consider intoxication and negligence as a single element, it is appropriate to consider the degree and effects of intoxication as a "factor" in determining whether a defendant's conduct was criminally negligent. To establish criminal negligence, it is necessary to show conduct which is "a gross deviation from the standard of care that an ordinary person would exercise in *all* the circumstances as viewed from the actor's standpoint." § 76–2–103(4), *supra* (emphasis added). It is therefore a subjective element requiring consideration of *all* relevant circumstances surrounding the incident.

---

and undertakes to drive a motor vehicle, even if the defendant commits a negligent act or violates a traffic rule or ordinance. [Defendant's requested instruction No. 4.]

You will note in these instructions that "driving while under the influence of alcohol to a degree which renders the actor incapable of safely driving a vehicle" is one element of the offense charged and that criminal negligence is another separate element. A finding that defendant was under the influence of alcohol at the time of the accident does not warrant a finding that he necessarily operated his vehicle in a criminally negligent manner. [Defendant's requested instruction No. 6.]

11. INSTRUCTION NO. 15

You are instructed that "criminal negligence" is defined as follows:

A person engages in conduct with criminal negligence or is criminally negligent with re-. spect to circumstances surrounding his conduct or the result of his conduct . . .

"When he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the defendant's standpoint."

INSTRUCTION NO. 16

In order to find that the defendant acted with criminal negligence, you must find from the evidence the following:

1. The defendant's conduct placed another at risk; and

2. The risk was substantial and unjustifiable; and,

3. The failure to perceive the risk constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the defendant's standpoint.

Thus, the trial court's determination that criminal negligence has not a single factor, but several factors, and that the degree of intoxication can be considered as one of those factors, is consistent with the definitional requirement of § 76–2–103(4).

We further hold that the trial court's reliance upon the *Capps* decision as a basis for instruction No. 17 was proper. That *Capps* supports the consideration of intoxication as a factor in criminal negligence is clearly illustrated by the following language from that decision:

> In this case there was ample evidence that appellant had imbibed to such a degree that it was apparent to all who saw and heard him that his locomotion and his power of speech were markedly affected. It is our opinion that a person who drives a car while in such a condition is reckless and evinces a marked disregard for the safety of others and is therefore guilty of criminal negligence.[12]

Although *Capps* was cited as authority in the overruled *Anderson* decision, it was not overruled by *Chavez* because it did not reach the same conclusions nor involve the same issues as did *Anderson, Durrant* and *Wade, supra.* In *Capps,* the defendant was convicted of involuntary manslaughter, not automobile homicide, and the Court determined, not that intoxication was prima facie evidence of criminal negligence, but rather that the drunkenness of the defendant was to be considered a factor since it

indicated recklessness and a marked disregard for the safety of others as required for a finding of criminal negligence. It is therefore supportive of instruction No. 17.

In light of the foregoing, the trial court's denial of defendant's requested instructions (defendant's requested instructions No. 4 and No. 6) defining criminal negligence and differentiating between the elements of intoxication and criminal negligence was a proper exercise of its discretion.

Defendant further avers that the trial court erred in instructing the jury as to definitions applicable to civil cases. This averment is targeted at instructions No. 22 through 24.[13] Defendant contends that these instructions set forth concepts of simple negligence, rather than criminal negligence, and tend to confuse the jury as to the correct standard to be applied in their deliberations. Furthermore, he argues that these instructions express the objective standard employed in civil cases and do not focus on the appropriate subjective standard required to find criminal negligence (U.C.A., 1953, § 76–2–103(4)).

Inasmuch as the nature of this claim resembles closely that of defendant's first claim regarding instruction No. 17, we cite the following time-honored rule as dispositive of both:

> As we have reiterated innumerable times one instruction should not be considered

---

12. 176 P.2d at 874.

13. INSTRUCTION NO. 22

The law imposes upon the driver of any vehicle using a public highway the duty to exercise ordinary and reasonable care to avoid causing an accident from which injury might result. This duty requires him to be vigilant at all times, keeping a lookout for traffic, traffic signals and other conditions reasonably to be anticipated; and to keep the vehicle under such control that he can stop as quickly as might be required of him in situations that would be anticipated by an ordinary, prudent driver in like position in order to avoid a collision.
INSTRUCTION NO. 23

You are instructed that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential

hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection.
INSTRUCTION NO. 24

You are instructed that general human experience supports the inference that when one in possession of his faculties looks in the direction of an object clearly visible, he sees it. When there is evidence to the effect that one did look, but did not see that which was in plain sight, in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence, or the person was negligently inattentive.

The driver of a motor vehicle is charged with the duty of seeing those objects or persons which he would have seen had he been exercising reasonable care.

in isolation in order to predicate a claim of error upon it, but the instructions must be read and understood as a connected whole.[14]

Accordingly, instructions No. 22 through 24, as well as instruction No. 17, are not to be considered in isolation, but should be viewed together with all other instructions. So considered, instructions No. 22 through 24 do not introduce an objective civil standard of negligence; they merely set forth certain factors which contribute to the overall subjective determination of criminally negligent conduct.

Thus, when considered as a whole, the instructions given by the trial court adequately discharged its duty to instruct the jury on the elements of the crime of automobile homicide, as they are prescribed by the *Chavez* ruling.

The conviction and judgment are affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

**14.** *Taylor v. Johnson,* 18 Utah 2d 16, 414 P.2d 575, 577 (1966). *See also Black v. McKnight,* Utah, 562 P.2d 621 (1977); *Whyte v. Christensen,* Utah, 550 P.2d 1289 (1976).